IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

APRIL 1997 SESSION

FILED

October 3, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | C.C.A. No. 03C01-9512-CC-00383 |
| | ) | |
| **Appellee,** | ) | HAMBLEN COUNTY |
| | ) | |
| **VS.** | ) | **HON. LYNN W. BROWN, JUDGE** |
| | ) | |
| **LEONARD EDWARD SMITH,** | ) | (Death Penalty) |
| | ) | |
| **Appellant.** | ) | |

FOR THE APPELLANT:

**J. ROBERT BOATRIGHT**
150 Commerce Street
Kingsport, TN 37660

**LARRY S. WEDDINGTON**
200 Seventh Street
Bristol, TN 37620

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**AMY L. TARKINGTON**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**H. GREELY WELLS, JR.**
District Attorney General
P. O. Box 526
Blountville, TN 37617-0526

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**O P I N I O N**

This is the third trial in which the defendant, Leonard Edward Smith, was sentenced for the felony murder of Novella Webb. On each occasion he was sentenced to death by electrocution. The guilt of the defendant having been previously affirmed on direct appeal, the present appeal resulted solely from the re-sentencing hearing. Finding as an aggravating circumstance that the defendant had been previously convicted of one (1) or more felonies, other than the present charge, which involved the use or threat of violence to the person, the jury again imposed the death penalty. Defendant presents the following issues for our review:

(1) whether the trial court erred by not allowing the defendant to establish selective prosecution by the district attorney general in death penalty cases;

(2) whether the trial judge erred by not recusing himself;

(3) whether the trial court erred by denying the defendant the services of a jury selection expert;

(4) whether the trial court committed errors with regard to the jury selection process;

(5) whether the trial court erred in honoring the defendant's request not to present further mitigating evidence;

(6) whether the trial court erred in allowing the introduction of the judgment of conviction for the present offense;

(7) whether the trial court erred with regard to the introduction of evidence of prior violent felonies of which the defendant had been convicted;

(8) whether the trial court erred in allowing the introduction of victim impact evidence;

(9) whether the state engaged in prosecutorial misconduct;

(10) whether the trial court committed errors with regard to the jury instructions;

(11) whether the trial court erred in allowing the jurors to take exhibits to the jury room during deliberations;

(12) whether the trial court erred in declaring the death penalty statutes constitutional; and

(13) whether imposition of the death penalty was excessive and disproportionate to the penalty imposed in similar cases.

Finding no reversible error, we AFFIRM the sentence of death.

## CASE HISTORY

Defendant was originally charged with the murder of John Pierce and Novella Webb, both of whom were killed in Sullivan County. Venue was changed to Hamblen County at defendant's request, and he was convicted on two (2) counts of felony murder. At the conclusion of all the proof in the first trial, the state withdrew the death penalty request for the murder of Pierce, whereupon defendant received a life sentence for this homicide. He was then sentenced to death for the murder of Webb. On his first direct appeal, the Tennessee Supreme Court affirmed the conviction and the life sentence for the murder of Pierce but reversed the conviction for the murder of Webb. Finding an improper joinder of offenses as well as prosecutorial misconduct during final argument, the Court reversed and remanded for a new trial. *See* State v. Smith, 755 S.W.2d 757 (Tenn. 1988) (hereinafter "Smith I").

Defendant was re-tried and convicted for the felony murder of Webb and again sentenced to death by electrocution. On direct appeal the Tennessee Supreme Court affirmed the conviction but vacated the death penalty finding (1) the jury was improperly allowed to consider the life sentence imposed for the Pierce murder in considering the death penalty for the Webb murder; and (2) the underlying felony was improperly used as an aggravating circumstance pursuant to State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992). *See* State v. Smith, 857 S.W.2d 1 (Tenn. 1993) (hereinafter "Smith II").

Upon remand the trial judge *sua sponte* changed venue from Hamblen County to Johnson County. The trial judge further overruled a motion for recusal. An extraordinary appeal was granted by this Court pursuant to Tenn. R. App. P. 10(a). On extraordinary appeal this Court found the trial court erred by changing venue without defendant's consent. The refusal of the trial judge to recuse himself was affirmed; however, this Court noted that this issue could be re-litigated on direct appeal. *See* State v. Smith, 906 S.W.2d 6 (Tenn. Crim. App. 1995) (hereinafter "Smith III").

A re-sentencing hearing was then conducted before a jury in Hamblen County.

3

Finding as an aggravating circumstance that the defendant had previously been convicted of one (1) or more felonies, other than the present charge, which involved the use or threat of violence to the person, the jury again imposed the death penalty. The trial court ordered that the death penalty run consecutively to the life sentence in the Pierce murder. This appeal resulted.

## EVIDENCE AT RE-SENTENCING HEARING

The evidence offered at the re-sentencing hearing was rather limited. The state introduced a Carter County indictment charging the defendant with armed robbery along with the judgment revealing that defendant was convicted of simple robbery. An officer with the Carter County Sheriff's Department identified the defendant as the same Leonard Edward Smith convicted of that robbery. The state introduced another Carter County indictment and judgment of conviction of simple robbery. Another officer identified the defendant as the same Leonard Edward Smith who was convicted of that robbery.

The state then introduced the redacted judgment revealing that defendant had been convicted of first degree murder in the Pierce case. The reference to the life sentence was redacted. Also introduced was the judgment of conviction in the instant case, the Webb murder, revealing that defendant had been convicted of first degree murder. There was no reference to the sentence previously imposed. An agent of the Tennessee Bureau of Investigation identified the defendant as being the same Leonard Edward Smith convicted of these two murders.

The daughter of the victim testified that her parents operated a country store for many years, and her mother was 59 years of age at the time of her death. She further testified that her father was hospitalized as a result of this robbery and was never able to work again. She stated that her family lived with the murder all the time.

The defendant's only witness was the detective in charge of the investigation of the case. At the request of defense counsel, he read defendant's statement which

4

was taken shortly after the arrest:

I, Leonard Edward Smith, am giving this statement of my own free will and without any threats or promises being made to me. On Monday, May 21, 1984, I was with my girlfriend Angie O'Quinn and David Hartsock and we went and got some liquor and went to a road near the Sullivan-Carter County line. We parked and were just drinking and talking and smoked some joints. While we were on that road in my black Ford Pinto which I had painted black because it used to be orange, David said "Get out, I want to talk to you." He and I got out and walked a ways from the car where Angie couldn't hear us talking and David said, "I can get us a little bit of money down here at this store." He said, "It is the store down at the county line," and I asked him if it was Shorty Malone's and he said, "Yes." Angie and I drove David down there, and let him off a little ways from the store. I parked on the little paved road beside the store. David had a thirty-two caliber chrome plated pistol with him. The pistol was his pistol. I heard several shots fired and just a few seconds later David came running around the store. David jumped into the car and said, "Get the hell out of here, I had to shoot him." I figured it was Shorty because he ran the store. We drove out the road that goes behind the side of Malone's Grocery, and it dead ends, and you can turn left to the Wautauga area or right back to Sullivan County. We turned onto the Wautauga Highway and drove to what is known as Mountain Road. I asked David if he shot the man, and he said that he shot him one time and the man pulled a gun and started shooting at him. I don't remember if he said what money he got. I drunk some more liquor, and made Angie get out of the car. I started driving and was just going to drive us out of the mountain. We came out at some store, and I turned left, and drove until I realized I was going to [sic] wrong way, and I pulled in at Webb's Store to turn. I stopped the car at Webb's and David jumped out, and I ran in the store behind him. David ran and jumped on the counter, and knocked the old man over and yelled to me, "Get that bitch" referring to an old woman at the end of the counter. I started towards her, and she started throwing things at me and started spraying paint on me. I fired one shot just to scare people, but the old woman just kept spraying orange paint and came towards me. I couldn't see because of the paint and I held the gun up and apparently the old lady was trying to get the gun away from me and it went off. We ran from the store when I fired the second shot. I didn't really know that I had shot her until we heard it later on the news. When we were in Webb's Store the old man was hollering, "Help me, help me," and hollering for his wife. The old woman never did say anything that I remember. I know that before we left the store, some man came up to the door, and I told him to get out of there. I didn't get any money from either store, and David didn't say if he did or not. David and I left Webb's

5

and went back up towards Mountain Road, and picked Angie up. I told her we had to get out of there, and we drove down towards Underwood Park, and set the car on fire. David cut a hose next to the carburetor and set the car on fire. David and Angie and me took off on the trails, and really didn't know which way to go. We came out at a house on Indiana Creek. It was the Johnson residence because my dad had sold them the house. We didn't go to the house until late last night, and Angie got Gladys Sheets to take us to the home where we were arrested this morning. I had never been to the house before but had been in the area. When Gladys drove up to Dennis Cove, she said she thought we did it. I had taken my shirt and wrapped my feet so I could walk and I think I left it in Gladys' car or at the house. Gladys had told us that Mrs. Webb, and the man at Malone's were both dead. We told Gladys that we didn't do it and she said, "If you didn't, you better keep the gun because the news said it was a thirty-eight" and she knew we had a thirty-two caliber. I told David to throw the gun out anyway because I knew we had done it. He threw it out as we went over a bridge, and we drove on up to the house. We stopped at a grocery store, and Angie and Gladys went in and got some food for us to take to the house. We fixed something to eat, went to sleep, but I felt like they knew where we were at. I had cut mine and David's hair with a pair of scissors Angie had in her pocketbook because I knew they would be looking for somebody with longer hair. This morning I heard a loud noise, and I knew we were caught then. I told Angie I was going out, and you come out too, so we won't get hurt. Somebody had yelled for us to come out, and David went out first. All I know is that everything didn't turn out the way it was supposed to, and it shouldn't have happened. I am sorry for what happened, because I know I am a thief, but I don't think of myself as a murderer. This is all I know to tell you about what happened.

After the testimony of the detective, the defendant requested that his attorneys present no further mitigating evidence nor make a closing argument. The trial court determined that the defendant was competent to make such a request. No further mitigating evidence was submitted.

The state's rebuttal proof consisted of re-calling the daughter of the victim. She testified that during the 11 years since the homicide, she had never seen any evidence of remorse from the defendant.

The state made a closing argument. Defense counsel, honoring defendant's request, did not.

6

# I. **SELECTIVE PROSECUTION**

Defendant filed a pre-trial motion requesting that the district attorney general disclose the standards used to determine whether to seek the death penalty in murder cases. The assistant district attorney general explained that aggravating and mitigating circumstances were examined and weighed in order to determine whether to seek the death penalty under particular facts. Defense counsel's request to put the assistant district attorney general under oath to testify was denied by the trial court.

Prosecutorial discretion used in selecting candidates for the death penalty does not result in any constitutional deprivation. Gregg v. Georgia, 428 U.S. 153, 198-99, 96 S.Ct. 2909, 2937, 49 L.Ed. 2d 859 (1976); State v. Brimmer, 876 S.W.2d 75, 86 (Tenn. 1994); State v. Cazes, 875 S.W.2d 253, 268 (Tenn. 1994). This issue is without merit.

# II. **RECUSAL OF TRIAL JUDGE**

Defendant contends the trial judge should have granted a motion for recusal since the trial judge was the prosecuting attorney in an earlier robbery case that the state relied upon as an aggravating circumstance. A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991). A motion for recusal should be granted whenever the judge's impartiality might reasonably be questioned. Tenn. Sup. Ct. Rule 10, Code of Judicial Conduct, Canon 3C; State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995).

The issue of recusal was addressed in the extraordinary appeal in Smith III. We noted that the record did not establish that the trial judge acted as a lawyer in any matter "in controversy" and further found no indication of bias. Smith III, 906 S.W.2d at 12. We found that the disqualification provisions of Article 6, § 11 of the Tennessee Constitution precluding a judge from presiding "on the trial of any cause... in which he

may have been of counsel..." does not apply to prior concluded trials. Id. at 12 (citing State v. Warner, 649 S.W.2d 580, 581 (Tenn. 1983)). We, nevertheless, concluded that the issue could be more fully litigated in the direct appeal if the defendant establishes that the nature of the trial judge's participation in the earlier prosecution deprived the defendant of a fair and impartial arbiter. Our review of the record indicates no further evidence of the nature of the trial judge's participation in the underlying charge. Accordingly, this issue is without merit.

## III. JURY SELECTION EXPERT

Defendant requested the expert services of a licensed private investigator, two (2) psychologists, a medical doctor and a jury selection expert. All services were authorized except the jury selection expert. Defendant challenges this denial.

The decision of whether to authorize expert services lies within the sound discretion of the trial court. *See* State v. Cazes, 875 S.W.2d 253, 261 (Tenn. 1994), *cert. denied*, ___ U.S. ___, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); State v. O'Guinn, 709 S.W.2d 561, 568 (Tenn. 1986) *cert. denied,* 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). The right to these services exists only upon a showing of a particularized need. State v. Shepherd, 902 S.W.2d 895, 904 (Tenn. 1995); State v. Black, 815 S.W.2d 166, 179-80 (Tenn. 1991). "The defendant must show that a substantial need exists requiring the assistance of state paid supporting services and that his defense cannot be fully developed without such professional assistance." State v. Evans, 838 S.W.2d 185, 192 (Tenn. 1992), *cert. denied* 510 U.S. 1064, 114 S.Ct. 740, 126 L.Ed.2d 702 (1994).

Our Supreme Court has held that there is no constitutional violation in the denial of a capital murder defendant's request for funds for a jury selection expert, absent a showing of any special need. *See* State v. Black, 815 S.W.2d at 179-80. There was no showing of a particularized need for a jury selection expert in the case at bar. Defense counsel had represented defendant in both of his prior trials and conducted extensive *voir dire* in the present case. The trial court did not abuse its discretion in

8

denying funds for a jury selection expert.  This issue is without merit.

## IV.  JURY SELECTION

### A.  Questionnaire on Life Imprisonment

Defense counsel was allowed to submit an extensive questionnaire to potential jurors prior to the jury selection process.  The trial judge disallowed, however, two (2) questions asking whether the potential juror believed that a person sentenced to life would spend the rest of his life in prison, and if not, how many years he/she thought such a person would serve.  One of these questions also asked whether this would make the potential juror less likely to vote for a life sentence.

The scope and extent of *voir dire* is entrusted to the discretion of the trial judge whose actions will not be disturbed absent a clear abuse of discretion.  State v. Irick, 762 S.W.2d 121, 125 (Tenn. 1988); State v. Poe, 755 S.W.2d 41, 45 (Tenn. 1988).  Defendant contends more leeway should be allowed in *voir dire* so as to enable him to intelligently exercise peremptory challenges.  Although we agree with this general statement, we find no abuse of discretion in this instance.  Without the opportunity of an explanation from counsel or the court as to these questions on the questionnaire, this could lead to unwarranted speculation as to the meaning of a life sentence.  This issue is without merit.

### B. Group Voir Dire

The trial judge denied defendant's request for individual *voir dire* on all issues except pre-trial publicity and views on the death penalty.  Defendant cites three (3) instances during group *voir dire* when jurors stated they would be unable to follow the law.  He contends he was prejudiced by group *voir dire*.  All of these jurors were ultimately excused for cause.

The trial court's authority to question jurors individually is permissive, not mandatory.  State v. Hutchison, 898 S.W.2d 161, 167 (Tenn. 1994), *cert. denied* 116 S.Ct. 137 (1994).  It is only where there is a significant possibility that jurors have been

9

exposed to potentially prejudicial material that individual *voir dire* is mandated. <u>State v. Cazes</u>, 875 S.W.2d at 262. Our review of the record does not indicate any prejudice to the defendant as a result of group *voir dire*. The three (3) instances related by the defendant did not result in prejudicial information being imparted to other jurors. This issue is without merit.

### C. Alternating Voir Dire Questioning

Defendant complains that the trial judge erred in not alternating the order of *voir dire* between the state and the defense. This issue was rejected in <u>Smith</u> II, 857 S.W.2d at 20. We find no abuse of discretion in allowing the state to proceed first in *voir dire* questioning.

### D. *Sua Sponte* Dismissals for Cause

Defendant contends the trial court erred by *sua sponte* excusing several prospective jurors for cause. In the instances cited by defendant, each juror had indicated that he or she could not follow the law. It is clear that each juror's views would "prevent or substantially impair the performance of his [her] duties as a juror in accordance with his [her] instructions and his [her] oath." <u>Wainwright v. Witt</u>, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985).

The trial court's findings on this issue are entitled to a presumption of correctness since they involve a determination of demeanor and credibility, and the burden rests on the defendant to establish by clear and convincing evidence that the trial court's determinations were erroneous. <u>State v. Alley</u>, 776 S.W.2d 506, 518 (Tenn. 1989). The responses of these jurors gave the judge the "definite impression" they could not follow the law. <u>Wainwright v. Witt</u>, 469 U.S. at 425-26, 105 S.Ct. at 853.

These jurors met the standard for dismissal. *See* <u>State v.Hutchison</u>, 898 S.W.2d 161 (Tenn.1994). Furthermore, the argument that defense counsel should be allowed to rehabilitate such jurors is without merit. <u>State v. Harris</u>, 839 S.W.2d 54, 65 (Tenn. 1992).

### E. Failure to Excuse for Cause

Defendant contends the trial judge erred in failing to excuse two (2) potential jurors who stated they could not consider mitigating evidence. Although both potential

10

jurors initially stated they would have trouble considering certain kinds of mitigating evidence, the totality of the questions and answers reveals that they could follow the law in weighing aggravating and mitigating circumstances. The trial court has wide discretion in ruling on the qualifications of jurors. State v. Howell, 868 S.W.2d 238, 248 (Tenn. 1993). The failure to exclude these two (2) jurors was not an abuse of discretion.

Furthermore, one of the jurors was excused by defendant's peremptory challenge. Neither did the other juror sit on the panel. The defendant exercised only six (6) peremptory challenges out of the allowed 15 challenges. Therefore, defendant is entitled to no relief. See State v. Howell, 868 S.W.2d at 248-49.

## V. FAILURE TO PRESENT FURTHER MITIGATING PROOF

After the testimony of the investigating detective who read the defendant's pre-trial statement to the jury, defense counsel advised the trial judge that the defendant wanted to waive further mitigating proof. Since this was against the advice of counsel, the trial judge allowed a recess in which counsel discussed this issue with the defendant. Upon returning to the courtroom, counsel again stated defendant's desire to rest the case and waive final argument. According to counsel, defendant had considered waiving mitigation proof several months earlier. The trial court questioned the defendant as to this decision, including the likelihood that the "jury will almost certainly return with a verdict of death by electrocution." Defendant, who refused to communicate directly with the trial judge, acknowledged through counsel that he understood.

Defense counsel was questioned extensively by the trial judge as to defendant's competency. Noting that defendant had been examined by various experts, defense counsel stated none of the reports indicated that he was incompetent. Both defense counsel advised the court they had no doubts about defendant's competency and ability to make this decision. The trial judge was satisfied that the defendant understood the ramifications of this decision.

11

Defense counsel then rested the case even though other witnesses were prepared to testify on behalf of the defendant. Final argument was also waived at the request of the defendant. Defendant now contends the trial court erred in allowing the defendant to waive further proof and final argument.[1]

## A. Waiver

Firstly, we note that the issue of the failure to present further mitigating proof and final argument has been waived. Defendant seeks relief for something he chose to do. Relief may not be granted to a party responsible for an alleged error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the alleged error. Tenn. R. App. P. 36(a); State v. Gregory, 862 S.W.2d 574 (Tenn. Crim. App. 1993). The issue is also waived by the failure to raise it in the motion for new trial. Tenn. R. App. P. 3(e); State v. Moffett, 729 S.W.2d 679 (Tenn. Crim. App. 1986). Nonetheless, we will address the issue.

## B. Defendant's Right to Control Defense

Defendant now contends he had no right to control the presentation of his defense; therefore, it was error for the court to allow defense counsel to follow his directive to present no further mitigating proof nor make a closing argument.

In death penalty cases, the sentencer may not be precluded from considering any aspect of a defendant's character or record as a basis for a sentence less than death. Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978) (plurality opinion); see also Johnson v. Texas, 509 U.S. 350, 361, 113 S.Ct. 2658, 2666, 125 L.Ed.2d 290, reh'g denied, 509 U.S. 941, 114 S.Ct. 15, 125 L.Ed.2d 767 (1993). The United States Supreme Court has held that mitigating evidence is relevant to sentencing hearings and should be heard. See California v. Brown, 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987); Eddings v. Oklahoma, 455

---

[1] The defendant's reason for the request to waive further mitigating proof and argument is not revealed in the record. Arguably, it could be strictly tactical hoping for a life sentence, or it could be that defendant desired the death penalty. The defendant's motive is not determinative of this issue on appeal.

U.S. 104, 113-15, 102 S.Ct. 869, 876-77, 71 L.Ed.2d 1 (1982). As a general rule, counsel should present mitigating evidence. Goad v. State, 938 S.W.2d 363 (Tenn. 1996). However, there is no legal requirement and no established practice that the accused must offer evidence at the penalty phase of a capital trial. State v. Melson, 772 S.W.2d 417, 421 (Tenn. 1989), *cert. denied* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *see also* Darden v. Wainwright, 477 U.S. 168, 184-85, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986). In fact, counsel has properly seen fit not to offer any evidence at the penalty phase in many death penalty cases. State v. Melson, 772 S.W.2d at 421 (citing sixteen cases heard by the Tennessee Supreme Court).

At the heart of the issue in this case is whether counsel should disregard the client's desires as to how the defense should be conducted. The purpose of a defense lawyer is to assist a defendant in making a defense and to represent the defendant before the court. State v. Franklin, 714 S.W.2d 252, 262 (Tenn. 1986). Although a client may conduct his or her own defense ultimately to his or her detriment, that choice must be honored out of "that respect for the individual which is the lifeblood of the law." Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). We are certainly not suggesting that counsel must honor an illegal or unethical request from the client. However, the authority to make decisions generally belongs to the client and, if made within the framework of the law, such decisions are binding on counsel. Sup. Ct. Rules, Rule 8, Code of Prof. Resp., EC 7-7.

The nature of the attorney-client relationship in a criminal case was addressed in State v. Ali, 329 N.C. 394, 407 S.E.2d 183 (1991). The court found no constitutional violation when counsel complied with the wishes of the defendant in accepting a juror when counsel suggested otherwise. The court found that the attorney-client relationship is one based upon principles of agency as opposed to guardian and ward. Ali, 407 S.E.2d at 189; see also People v. Wilkerson, 123 Ill.App.3d 527, 463 N.E.2d 139 (1984).

We likewise find that the attorney-client relationship is primarily one of agency. If a competent defendant knowingly and voluntarily chooses a lawful course of conduct, counsel is ordinarily bound by that decision. If the defense is prejudiced

13

because of a defendant's choice, a defendant should not later be heard to complain as to the course the defendant chose. State ex rel. Lea v. Brown, 166 Tenn. 669, 64 S.W.2d 841, 848 (1933); Dukes v. State, 578 S.W.2d 659, 665 (Tenn. Crim. App. 1978).

The United States Supreme Court has recognized the right of a mentally competent defendant to forego appellate review. Demosthenes v. Baal, 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990); Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); Gilmore v. Utah, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). A competent defendant may, therefore, waive the right to present certain mitigating evidence. Singleton v. Lockhart, 962 F.2d 1315, 1322 (8th Cir. 1992). Counsel is not ineffective if he or she follows the defendant's request not to fight the death penalty. Autry v. McKaskle, 727 F.2d 358 (5th Cir. 1984); Clark v. State, 613 S.2d 412 (Fla. 1992), cert. denied 114 S.Ct. 114 (1993).

In this case trial counsel received explicit instructions from their client not to present further mitigating evidence nor make a closing argument. Trial counsel believed the defendant to be competent as did the trial judge. In view of counsels' and the court's explanations to defendant of the ramifications of his decision, the competence of the defendant, and his knowing and voluntary request that no further mitigating evidence nor argument be presented, we find no error committed by the trial court in allowing the waiver of further mitigating evidence and closing argument.

## C. Competency

Defendant contends the trial court erred by failing to conduct a sufficient inquiry into the defendant's competency when defendant decided not to present further mitigating evidence and closing argument.

Firstly, this issue was waived by the failure to request the trial court to do anything further. Tenn. R. App. P. 36(a); see also State v. Estes, 655 S.W.2d 179, 182 (Tenn. Crim. App. 1983) (holding that the failure of counsel to bring the matter of competency before the court amounted to a waiver of that issue).

Secondly, there is nothing in the record to indicate that defendant was incompetent. He had been examined by a clinical psychologist and a psychiatrist

14

before this trial. Counsel indicated there was nothing that would establish incompetence. The defendant was questioned by the trial judge. Counsel stated several times that the defendant was now and had always been competent. The trial judge's determination that the defendant was competent to make this decision is supported by the record. This issue is without merit.

### D. Reliability of Appellate Review

Defendant contends that meaningful appellate review of death penalty cases is undermined by the failure to present available mitigating evidence.

After restricting the class of death-eligible offenses, a state must utilize additional procedures under the Eighth Amendment to the United States Constitution to assure reliability in the determination that death is the appropriate punishment in a given capital case. *See* Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Individualized determinations on the basis of the character of the individual and the circumstances of the crime must be allowed. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); State v. Howell, 868 S.W.2d at 256. A proper narrowing device must differentiate a death penalty case in an objective,

even-handed, and substantially rational way from murder cases in which the death penalty may not be imposed. State v. Hines, 919 S.W.2d at 583.

Comparative proportionality review by an appellate court is not constitutionally required in every case in which the death penalty is imposed and the defendant requests it. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). However, meaningful appellate review does play a crucial role in ensuring that the death penalty is not imposed arbitrarily or irrationally. Parker v. Dugger, 498 U.S. 308, 321, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (1991).

The Tennessee statute creates a comparative proportionality review to serve as an additional safeguard against arbitrary or capricious sentencing. Tenn. Code Ann. § 39-2-205 (1982) [presently Tenn. Code Ann.§ 39-13-206)(Supp. 1996)]; State v. Bush, ___ S.W.2d ___ (Tenn. 1997); State v. Harris, 839 S.W.2d 54, 84 (Tenn. 1992). In addition, Sup. Ct. Rules, Rule 12 requires the submission of a trial judge's

15

report to be used by the appellate court as an integral part of proportionality review. *See* State v. Barber, 753 S.W.2d 659, 663-64 (Tenn. 1988).

Unfortunately, in this case the only way to have gotten further possible mitigating evidence before the jury would have required counsel to disregard their client's emphatic instructions, thereby creating an untenable conflict. This they could not do. Trial counsel must function as an advocate for the defendant as opposed to a mere friend of the court. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

The heightened standard of reliability in death penalty cases does not mandate or justify forcing an unwilling defendant to present certain mitigating evidence. Wallace v. State, 893 P.2d 504 (Okla. Crim. 1995), *cert. denied* 116 S.Ct. 232 (1995). As did the court in Wallace, we likewise conclude that the Eighth Amendment does not require the presentation of such proof under these circumstances and does not prevent an adequate appellate review.[2]

This issue is without merit.


## VI. ADMISSION OF WEBB JUDGMENT OF CONVICTION


The state introduced the judgment showing that the defendant had been found guilty of the first degree murder of Webb. Defendant contends this judgment was erroneously relied upon by the state as an aggravating circumstance.

No contemporaneous objection was made to the introduction of this evidence. The issue is, therefore, waived. Tenn. R. App. P. 36(a); State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995). We will, nevertheless, address this issue.

This was a re-sentencing hearing only as guilt had already been determined and

---

[2] Noting that it would be inappropriate to require defense counsel to present mitigating evidence contrary to the wishes of the client and further noting the inappropriateness of the presentation of such proof by the prosecutor or under the authority of the trial judge, it has been suggested that the best accommodation of interests would be achieved by appointing an independent attorney whose specific role is to present mitigating evidence. Linda E. Carter, *Maintaining Systemic Integrity In Capital Cases: The Use of Court-Appointed Counsel to Present Mitigating Evidence When the Defendant Advocates Death*, 55 TENN. L. REV. 95, 147-49 (1987). We do not find that such is required by the United States Constitution or the Tennessee Constitution.

affirmed on the previous appeal. The state was entitled to show to the jury that the defendant had in fact been convicted of the first degree murder for which the jury was to determine the sentence.

Defendant's primary argument is that the state was improperly allowed to use this first degree murder conviction as an aggravating circumstance in the same case. The state relied upon one (1) aggravating circumstance; namely, the defendant was previously convicted of one (1) or more felonies, <u>other than the present charge</u>, whose statutory elements involved the use or threat of violence to the person. Tenn. Code Ann. § 39-2-203(i)(2) (1982) (emphasis added). Obviously, the state could not rely upon the present conviction as one of the previous violent felony convictions.

However, our reading of the record does not indicate that the state relied upon this conviction as one of the prior violent felonies. From *voir dire* through final argument the state contended that the defendant had been convicted of three (3) prior felony offenses involving violence or the threat of violence; namely, two (2) robberies and the first degree murder of Pierce. The trial judge further instructed the jury that the state alleged the defendant had been previously convicted of murder in the first degree and two (2) robberies. The trial court was obviously referring to the Pierce first degree murder conviction which had been made an exhibit. This issue is without merit.

## VII. PRIOR VIOLENT FELONIES

As previously stated, the prosecution relied upon the prior violent felonies aggravating circumstance. Tenn. Code Ann. § 39-2-203(i)(2) (1982), the statute in effect at the time of this crime, defined this aggravating circumstance as follows:

> The defendant was previously convicted of one (1) or more felonies, other than the present charge, which involved the use or threat of violence to the person.

Defendant contends the state was erroneously allowed to introduce evidence in support of this aggravating circumstance.

### A. Pierce Judgment

17

Defendant argues that the introduction of his conviction and redacted Order of Judgment for the first degree murder of Pierce was erroneously allowed as evidence. Smith I condemned the use of defendant's life sentence in the Pierce case as evidence in the Webb case. 755 S.W.2d at 767-69. Upon re-trial the state again failed to observe the warning in Smith I and related to the jury that the defendant had received a life sentence for the Pierce murder. On appeal in Smith II the Court again condemned this evidence and remanded for a new sentencing hearing. 857 S.W.2d at 25. Both Smith I, 755 S.W.2d at 769, and Smith II, 857 S.W.2d at 25, recognized the sentencing relevance of the Pierce conviction but not the Pierce life sentence.

The trial judge conducted an extensive jury-out hearing and redacted the Pierce judgment omitting any reference to the sentence. Upon being asked if there were any objections to the redactions, defense counsel made no objection. The issue is, therefore, waived. Tenn. R. App. P. 36(a); State v. Walker, 910 S.W.2d at 386. Furthermore, the jury was specifically instructed by the trial judge not to speculate as to the significance of any redactions. The jury is presumed to have followed the instructions of the court. State v. Woods, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990).

The admission of the redacted judgment showing the conviction but not the sentence is in compliance with the dictates of Smith I and Smith II. This issue is without merit.

### B. Direct Participation in Violence

Defendant contends that he did not directly participate in the use of violence in the Pierce murder as a co-defendant was the person who actually fired the shot that killed Pierce. He argues that direct participation is necessary to trigger this homicide as a prior violent felony. This issue was decided contrary to defendant's argument in Smith II, 857 S.W.2d at 10. *See also* State v. Teague, 680 S.W.2d 785, 789 (Tenn. 1984). This issue is without merit.

### C. Introduction of Indictment

Defendant contends the trial court erred in allowing the introduction of an armed robbery indictment since the judgment of conviction was only for simple robbery. This

18

issue has also been determined contrary to defendant's argument in both Smith I, 755 S.W.2d at 764, and Smith II, 857 S.W.2d at 20. This issue is without merit.

## VIII. VICTIM IMPACT TESTIMONY

The daughter of the victim testified briefly at the hearing. She related that her parents operated this country store for many years. She stated her mother was 59 years of age at the time of her death, that her father was never able to work again after his wife was killed, and that her family had to live with this murder every day. When the detective as a defense witness read the defendant's pre-trial statement acknowledging sorrow for what had happened, the victim's daughter testified in rebuttal that defendant had never exhibited remorse. Defendant contends this victim impact testimony was erroneously admitted.

In State v. Payne, 791 S.W.2d 10, 18 (Tenn. 1990), our Supreme Court held that, while this kind of evidence might be "technically irrelevant," the evidence is admissible relating to the defendant's personal responsibility and moral guilt. This ruling was affirmed by the United States Supreme Court when it held that there is no per se Eighth Amendment bar to such evidence. Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). More recently, the Tennessee Supreme Court announced its adherence to the admissibility of such evidence finding no violation of the Tennessee Constitution. State v. Brimmer, 876 S.W.2d 75, 86 (Tenn. 1994). The issue regarding victim impact testimony was raised in Smith II, and the Tennessee Supreme Court determined such testimony to be admissible. 857 S.W.2d at 14. The trial judge relied upon this holding in admitting the testimony.

Even accepting these decisions, the defendant contends these cases do not authorize victim impact testimony when such is not authorized under state law. Specifically, defendant contends that victim impact testimony is not recognized as an aggravating circumstance under our law.

19

It is undisputed that victim impact is not listed as a statutory aggravating circumstance. Tenn. Code Ann. § 39-2-203(i) (1982) [presently Tenn. Code Ann. § 39-13-204(i)(Supp.1996)]. However, the only "victim impact" testimony was given by the daughter and was extremely brief. The reference to victim impact in the state's final argument was also very brief. If there was error, it was harmless beyond a reasonable doubt. Tenn. R. App. P. 36(b).[3]

# IX.  PROSECUTORIAL MISCONDUCT

Defendant contends that prosecutorial misconduct undermined his rights to a fair trial and a reliable sentencing determination. No contemporaneous objection was made to any of the alleged improper arguments. The issue is waived. Tenn. R. App. P. 36(a); State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994). Nevertheless, we will address these issues.

## A.  Intentional Murder

Defendant contends the prosecutor improperly argued to the jury that the homicide was intentional as opposed to being accidental. Our review of the argument does not substantiate this claim. The prosecutor merely related the facts and circumstances surrounding the murder and stated the barrel of the gun "ended up in her nose, and that's where Leonard Smith pulled the trigger." This argument was not improper.

## B.  Victim Impact

Defendant contends the prosecutor improperly argued victim impact to the jury. As previously stated, the alleged victim impact argument was extremely limited. The prosecutor simply related that the victim and her husband had run a country store for some 40 years, the husband was elderly and in failing health, and the victim was 59

---

[3] We are mindful that other panels of this court have found error in the admission of victim impact testimony. State v. Clarence C. Nesbit, C.C.A. No. 02C01-9510-CR-00293 (Tenn. Crim. App. filed Apr. 22, 1997, at Jackson); State v. Perry A. Cribbs, C.C.A. No. 02C01-9508-CR-00211 (Tenn. Crim. App. filed Feb. 14, 1997, at Jackson); State v. Antonio M. Byrd, C.C.A. No. 02C01-9508-CR-00232 (Tenn. Crim. App. filed Dec. 30, 1996, at Jackson). However, harmless error was found in each case.

years of age. The prosecutor further stated that the homicide greatly affected the family and "won't go away." If there was error, at most it was harmless. Tenn. R. App. P. 36(b).

### C. Deterrence

Defendant contends the prosecutor unlawfully argued the need for deterrence. Any argument based upon general deterrence is improper. State v. Irick, 762 S.W.2d 121, 131 (Tenn. 1988); Smith II, 857 S.W.2d at 13.

The questioned argument was actually an explanation as to why felony murder was a first degree murder, the most serious offense under our law. The prosecutor stated that without felony murder, there would be no protection for those victimized by someone like the defendant and his co-defendant. We do not view this as a deterrence argument. This issue is without merit.

### D. Webb Conviction

Defendant contends the prosecutor improperly argued that the present conviction was a prior violent felony which the jury could consider as an aggravating circumstance. The prosecutor clearly argued to the jury that the exhibit representing the present conviction was the offense for which the jury was now going to be required to sentence the defendant to either life imprisonment or death. He reviewed the other three (3) judgments as those to be relied upon for prior felony convictions. The prosecutor did not argue that the present conviction could be considered as an aggravating circumstance. This issue is without merit.

## X. JURY INSTRUCTIONS

Defendant contends the trial court erred in failing to instruct the jury on specific non-statutory mitigating circumstances. Further, the defendant contends the trial court erred in refusing to instruct the jury to presume that a sentence to life imprisonment meant the defendant would spend the rest of his life in prison, whereas a sentence to death would presume death by electrocution.

### A. Non-Statutory Mitigating Circumstances

Defendant requested that the trial court give special jury instructions listing four non-statutory mitigating circumstances. The trial court declined to do so. Defendant contends this is reversible error under State v. Odom, 928 S.W.2d 18, 30 (Tenn. 1996).

The present offense was committed prior to November 1, 1989; therefore, sentencing for this capital offense is governed by the statutory law in effect on the date of the commission of the offense. State v. Hutchison, 898 S.W.2d 161, 174 (Tenn. 1994), *cert. denied* 116 S.Ct. 137 (1995). At the time of the commission of this offense, the statute did not require that the jury be instructed as to non-statutory mitigating circumstances. Tenn. Code Ann. § 39-2-203(e)(1982); State v. Hartman, 703 S.W.2d 106, 118 (Tenn. 1985).

State v. Odom required the jury to be instructed on non-statutory mitigating circumstances when raised by the evidence and specifically requested by either the state or the defendant. 928 S.W.2d at 30. However, Odom was based upon the requirements of the new statute, Tenn. Code Ann. § 39-13-204(e)(1991). Odom specifically recognized that neither the United States Constitution nor the Tennessee Constitution required the submission of non-statutory mitigating circumstances to the jury. 928 S.W.2d at 30 (citing State v. Hutchison, 898 S.W.2d at 173-74). We, therefore, conclude that the trial judge did not err in refusing to charge non-statutory mitigating circumstances as was allowable under the statute in effect on the date of the commission of the offense.

## B. After-Effect of Verdict

Defendant requested that the jury be instructed that they were to presume that if the defendant were sentenced to life imprisonment, he would spend the rest of his life in prison; and that if he were sentenced to death, he would be executed by electrocution. Alternatively, the defendant requested that the jury be instructed that a sentence of life imprisonment meant the defendant would remain in prison for the rest of his life, and that a sentence of death meant that the defendant would be executed by electrocution. These requests were rejected by the trial court. Our Supreme Court has recently ruled that the jury need not be given information about

22

parole availability.  State v. Bush, __ S.W.2d __ (1997).  Likewise, a trial court does not err by refusing to instruct jurors that they should presume that the sentence they assess will actually be carried out.  State v. Caughron, 855 S.W.2d 526, 543 (Tenn. 1993); *see also* Smith II, 857 S.W.2d at 11.  This issue is without merit.

## XI.  TAKING EXHIBITS TO JURY ROOM

Defendant contends the trial court erred in allowing the jury to take the exhibits with them to the jury room for use in deliberations.  More specifically, defendant contends he was prejudiced by the redactions on the Pierce and Webb convictions.

Tenn. R. Crim. P. 30.1 was in effect at the time of trial.  This rule provides that the jury shall take to the jury room all exhibits that were received in evidence unless the Court, for good cause, determines otherwise. Defendant's contention that the jury would engage in undue speculation due to the redactions on the Pierce and Webb convictions is without merit.  As previously noted, the jury had been specifically instructed not to speculate concerning these matters.  There was no abuse of discretion in allowing the jury to take these exhibits to the jury room pursuant to Tenn. R. Crim. P. 30.1.

## XII.  CONSTITUTIONALITY OF DEATH PENALTY

Defendant contends the Tennessee death penalty statutes are unconstitutional in the following respects:

(1) the statutes fail to meaningfully narrow the class
of death eligible defendants;

(2) the statutes allow the death penalty to be imposed
capriciously and arbitrarily;

(3) electrocution constitutes cruel and unusual
punishment; and

(4) the appellate review process in death penalty
cases is constitutionally inadequate.

Each of these contentions has been rejected by our Supreme Court. State v. Keen, 926 S.W.2d at 741-44. This issue is without merit.

## XIII. PROPORTIONALITY REVIEW

Pursuant to Tenn. Code Ann. § 39-2-205(c) (1982) [presently Tenn. Code Ann. §39-13-206(c)(1)(Supp.1996)], we have reviewed the sentence of death for this felony murder. The sentence was not imposed in an arbitrary fashion, and the evidence clearly supports the jury's finding of the statutory aggravating circumstance relating to the conviction of three (3) prior violent felonies. The evidence further clearly supports the jury's finding that this statutory aggravating circumstance outweighs any mitigating circumstances. We have further conducted a proportionality review as required by State v. Barber, 753 S.W.2d 659, 663-68 (Tenn.1988).[4] The sentence is neither excessive nor disproportionate to death sentences imposed in similar cases. See State v. Howell, 868 S.W.2d 238 (Tenn. 1993); State v. Boyd, 797 S.W.2d 589 (Tenn. 1990); State v. Johnson, 762 S.W.2d 110 (Tenn. 1988); State v. Bobo, 727 S.W.2d 945 (Tenn. 1987); State v. Goad, 707 S.W.2d 846 (Tenn. 1986); State v. Johnson, 698 S.W.2d 631 (Tenn. 1985); State v. King, 694 S.W.2d 941 (Tenn. 1985); State v. McKay, 680 S.W.2d 447 (Tenn. 1984); State v. Harries, 657 S.W.2d 414 (Tenn. 1983); State v. Simon, 635 S.W.2d 498 (Tenn. 1982); State v. Coleman, 619 S.W.2d 112 (Tenn. 1981).

We find no reversible error; therefore, the judgment of the trial court is AFFIRMED.[5]

_____ _____
_____JOE G. RILEY, JUDGE

_____

[4] Although there is no Tennessee Supreme Court Rule 12 report by the trial judge filed in the record, we have examined the reports filed after both prior trials of this case. The absence of a new report does not prevent adequate proportionality review. See State v. Smith, 893 S.W.2d 908, 927 (Tenn. 1994).

[5] No execution date is set since this case will be automatically reviewed by the Tennessee Supreme Court. Tenn. Code Ann. § 39-13-206(a)(1). If the death sentence is affirmed, that Court will set the execution date.

CONCUR:

_____
JERRY L. SMITH, JUDGE


_____
CHRIS CRAFT, SPECIAL JUDGE