STATE of Tennessee, Appellant,

v.

Tommie Okoh WARNER, Appellee.

Supreme Court of Tennessee,
at Knoxville.

Feb. 14, 1983.

On Rehearing April 18, 1983.

Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellant.

James J. Barrett, III, Lenny L. Croce, Oak Ridge, for appellee.

## OPINION

FONES, Chief Justice.

We granted the State's Rule 11 application to consider whether the Court of Criminal Appeals erred in setting aside the convictions of defendant for escape, armed robbery, aggravated kidnapping, assault with intent to commit murder in the first degree, and habitual criminal and ordering a new trial, because the trial judge refused to recuse himself. The motion to recuse filed by both defendant and the State, was based upon (1) the fact that the trial judge was the district attorney general when two of the underlying convictions charged in the habitual criminal indictment were obtained on guilty pleas, and (2) the fact that the trial judge had met with the sheriff of Anderson County and the chief of police of the City of Oak Ridge to discuss security at the forthcoming trial of defendant and did not invite defendant's counsel or the district attorney general to attend.

### I.

After confinement in Brushy Mountain Prison, defendant was transferred to the Anderson County Jail to serve out the remainder of a sentence imposed for a felony conviction. On September 14, 1979, he was granted permission to leave the jail to visit his family, failed to return at the scheduled hour of 9:00 P.M., and remained a fugitive until November 30, 1979.

On that date, an Oak Ridge police officer saw him run a stop sign. Defendant saw the officer following him, stopped and parked his car, and started walking away. The officer stopped, pursued him, and called for his driver's license, whereupon defendant turned upon the officer with drawn pistol, disarmed the officer, commandeered the police car, and drove the officer to a remote area. There defendant forced the officer to lie on the ground face down and handcuffed his hands behind his back. After saying, "Shipley, I have got to do this," defendant shot the officer in the back of the head. That bullet caused only a scalp wound, and somehow the officer got his hands loose and placed them over his head. Defendant fired a second shot that passed under the scalp, took off part of the officer's left ear, exited near the left eye, and mangled his left thumb. After asking, "Are you dead yet, Shipley?", defendant fired a third shot into the right side of the officer's head that shattered both jaw bones and passed through the base of the tongue. Defendant departed the scene in the police car and was arrested later that night. Miraculously, the officer was able to get to a nearby house, was taken to the hospital, and survived.

None of the material facts about the commission of the crimes charged were seriously disputed and the proof of guilt was overwhelming. In fact, defendant testified and admitted that he shot the officer in the head three times under the circumstances substantially as related above.

## II.

■ The primary ground relied upon in the motion for recusal was that Judge Scott had been District Attorney General in 1977 when defendant was indicted, pled guilty, was convicted, and sentenced for grand larceny and armed robbery. Both of those offenses were included as underlying convictions in the habitual criminal indictment. In addition, at the hearing on the motion to recuse, defendant testified that at or about the time he pled guilty and was sentenced for those offenses, Attorney General Scott,

in the presence of defense counsel, told defendant that, "[t]he next time that I come up in front of him or anything like that, that I was looking at the habitual act, you know."

Judge Scott stated for the record that although he did not recall that conversation with defendant and his counsel, that it was appropriate, routine, and the duty of a district attorney general, in similar circumstances, to warn a defendant that the commission of another felony could result in a habitual criminal charge. The Court of Criminal Appeals commented in part, "We do not regard the warning as an expression of hostility or other attitude that of itself might disqualify. . . . But even such a warning considered in conjunction with other events may become prejudicial to the accused."

The Court of Criminal Appeals also considered the question of whether these facts involve the constitutional disqualification, that no judge shall preside, "on the trial of any cause . . . in which he may have been of counsel. . . ." We agree with the intermediate court that the constitutional disqualification is limited by its very language to the *cause on trial* and does not include prior concluded trials or guilty plea convictions used to support a habitual criminal charge. We also agree that said incident provided no grounds for disqualification of the trial judge in this case.

## III.

■ The second ground for disqualification was that the trial judge held a conference with the sheriff of Anderson County and the chief of police of Oak Ridge without inviting defense counsel or the district attorney general.

At the hearing on the motion to recuse, the trial judge read into the record the letter he had written to the sheriff and chief of police calling for the conference alleged to require his disqualification. In substance, the letter expressed the trial judge's concern about security at the defendant's forthcoming trial because the victim of the crime was a police officer, the

notoriety the case had received, and the fact that defendant had been brought into his courtroom for previous hearings in shackles, which he could not allow to occur at the trial because of its possible prejudicial effect. Adding to the letter, Judge Scott stated that he considered it to be the primary responsibility of the sheriff, the chief of police, and the trial judge to plan the security and that thereafter his responsibility to fully advise defense counsel and the district attorney about the security arrangements. Again, the Court of Criminal Appeals exonerated the trial judge from error on that ground, but again, with a reservation.

"The conference no doubt should have included the district attorney and counsel for appellant which would have avoided the controversy that ensued. But since it was about security for the trial only, we see no impropriety or appearance thereof in the conference itself. We are gravely concerned, however, with the affect of the incident."

## IV.

After having addressed both grounds relied upon by the parties to support the motion for recusal, finding no constitutional violations, nor any basis for disqualification on the grounds of bias or prejudice, the Court of Criminal Appeals turned to two other aspects of the trial to support reversal and remand for a new trial.

First, the Court of Criminal Appeals held that:

"Two of the judgments bore the name of the judge as district attorney at the time. We think this tended to compromise the role of the judge as an impartial arbiter in the minds of the jurors and enlisted him on the side of the State. In our opinion this prejudiced appellant in his habitual criminal trial."

We disagree with that assessment of the affect on the jury of the trial judge's name appearing on the entry of judgment as district attorney general. Habitual criminality is not an independent crime but a status. The status of habitual criminality is made out by the State upon showing at a bifurcated hearing, following conviction of a defendant of a triggering felony, (1) that defendant has been convicted of two other felonies and that two of the three are among those specified in T.C.A. § 40–2801; and (2) that each of the three convictions were for separate offenses, committed at different times and on separate occasions. In short, the documentary evidence presented either satisfies those statutory requirements or it fails in some respect to do so. It is not within the province of the jury to find that the documentary evidence satisfied the statutory requirements when that evidence fails to do so. On the other hand, the jury did not "have the right to disregard what the Legislature had defined as making an habitual criminal even though juries sometimes do . . . ." *Wright v. State,* 217 Tenn. 85, 89, 394 S.W.2d 883, 885 (1965). We are unable to agree that any prejudice or improper influence upon the jury could have resulted in the habitual criminal stage of the trial from the name of the trial judge appearing as district attorney general on the prior convictions. The requirements of habitual criminality status were clearly and unequivocally satisfied in this case.

Finally, the intermediate court said that, "There is too much danger the imposition of consecutive sentencing was influenced by improper consideration which we have alluded to, for us to approve the action."

Before pronouncing sentence, the trial judge gave defendant the opportunity to say whatever he wished and defendant read a prepared statement. The trial judge responded, in part, as follows:

"[i]nstead of showing remorse towards this victim . . . you indicted society and blamed society. You said this was a racist society, and that justice was not done. . . .

Now you are a black subject and I know in your mind you might feel that this Court is discriminating but I want to tell you that your black lady counsel is a credit to your race. She is from a poor family and has worked her way up in society and done quite well. Tommy, you

chose a different course, and your problem is because of the course you have chosen."

The Court of Criminal Appeals then noted, that, "On appeal, defendant insisted that the trial judge's statements were racist in nature," indicative of hidden racial bias. The court responded to that contention as follows:

"Such expressions, however, often are honest endeavors to disavow prejudice and we think that is the case here. We do not understand the judge's statements to be an expression or implied indication the imposition of consecutive sentences was racially motivated."

Next, the Court of Criminal Appeals correctly observed that consecutive sentencing was within the guidelines of *Gray v. State*, 538 S.W.2d 391 (Tenn.1976); and "in that respect there was no abuse of discretion." However, that finding was prefaced with the following sentence:

"But the judge notwithstanding the habitual criminal sentence of life imprisonment, imposed the strongest punishment within his power, requiring every term to be served consecutively."

We reject any suggestion that it is improper to impose consecutive sentencing because the status of habitual criminality has also been adjudged.

Defendant's attempt to kill Officer Shipley was committed with deliberation and premeditation in as classic circumstances as a fiction writer could portray a cold blooded killing. It is a miracle that Officer Shipley survived. Defendant's actions were also a classic example of the dangerous offender category, one who has "little or no regard for human life," as defined in *Gray*. The failure of any trial judge presiding over this trial to impose consecutive sentencing would have been an arbitrary action.

Neither defendant's able counsel nor the Court of Criminal Appeals has pointed to a single action, instruction, or ruling of the trial judge before the jury during the course of the triggering offense trial or the bifurcated habitual criminal trial that to any degree indicated hostility, bias, prejudice or prejudgment on the part of Judge Scott, nor has our examination of the record disclosed any such action.

The judgment of the Court of Criminal Appeals is reversed and the judgment, convictions and sentences of the trial court are reinstated, and the cause is remanded to the Criminal Court of Anderson County for the enforcement thereof.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.

On Rehearing

FONES, Chief Justice.

Defendant has filed a petition to rehear the essence of which is an assertion that although the Court granted the Rule 11 application of the State, we were obligated under T.R.A.P. 13(a) to respond in our opinion to four issues defendant elected to brief.

Defendant's interpretation of T.R.A.P. 13(a) is erroneous, as a careful reading of the advisory commission's comments will reveal.

We have fully considered defendant's contentions on the issues not dealt with in our opinion and have found either that the Court of Criminal Appeals adequately and properly dealt with them or that they are without merit.

The Petition to Rehear is denied.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.