# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### Submitted on Briefs

## STATE OF TENNESSEE v. RAFFELL GRIFFIN, ET AL.

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Knox County
Nos. 114936, 115414, 114933, 114932, 114935
Kyle A. Hixson, Judge**

_____

### No. E2020-00327-SC-T10B-CO

_____

The trial judge in this matter served as a deputy district attorney general in Knox County at the time the defendants were indicted by the Knox County Grand Jury. After a subsequent appointment to serve as a trial judge in Knox County Criminal Court, the trial judge was assigned to the defendants' cases. The defendants moved for recusal, arguing that the trial judge had supervisory authority over their cases as Deputy District Attorney General. The trial judge denied the motions for recusal, and the defendants filed an appeal in the Court of Criminal Appeals pursuant to Tennessee Supreme Court Rule 10B, section 2. The Court of Criminal Appeals reversed the trial judge's decision, holding that recusal of the trial judge was necessary. We then granted the State's accelerated application for permission to appeal to this Court.[1] Having thoroughly reviewed the filings of the parties and the applicable law, we conclude that the trial judge's denial of the motion to recuse was appropriate in this case. Therefore, we reverse the decision of the Court of Criminal Appeals.

**Tenn. Sup. Ct. R. 10B Accelerated Appeal by Permission; Judgment of the
Court of Criminal Appeals Reversed; Judgment of the Trial Court Reinstated**

PER CURIAM.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Nicholas W. Spangler, Senior Assistant Attorney General; Charme P. Allen,

---

[1] We also granted permission to appeal in State v. Clark, No. E2020-00416-CCA-T10B-CO (Tenn. Crim. App. Mar. 23, 2020), and State v. Styles, No. E2020-00176-CCA-T10B-CO (Tenn. Crim. App. Mar. 10, 2020). All three cases involve identical recusal issues stemming from Judge Hixson's prior role as Deputy District Attorney General. The opinions in those cases are being released concurrently herewith.

District Attorney General; and TaKisha M. Fitzgerald, Assistant District Attorney General, for the appellant, State of Tennessee.

Forrest L. Wallace, Knoxville, Tennessee, for the appellee, Raffell Griffin.

Joshua D. Hedrick, Knoxville, Tennessee, for the appellee, Sidarius Jackson.

Rhonda Lee, Powell, Tennessee, for the appellee, Robert Cody, III.

Clinton Frazier, Maryville, Tennessee, for the appellee, Thakeleyn Tate.

## OPINION

## Factual and Procedural Background

In February 2019, Kyle A. Hixson was serving as Deputy District Attorney General for the Sixth Judicial District of Tennessee, which consists of Knox County. The Knox County Grand Jury indicted the defendants in this case on February 19, 2019, for conspiracy to possess a controlled substance with intent to sell or deliver, employing a firearm during a dangerous felony, violation of the RICO Act, first degree murder (Defendant Jackson), possession with intent to sell or deliver cocaine (Defendant Jackson), and possession of a firearm during a dangerous felony (Defendant Jackson).[2]

On December 10, 2019, Governor Bill Lee appointed Mr. Hixson to serve as the trial judge in the Knox County Criminal Court. Mr. Hixson took the oath of office on January 1, 2020, and was assigned to preside over the defendants' cases.

On January 23, 2020, defendant Sidarius Jackson filed a motion to recuse the trial judge. On January 31, 2020, defendants Raffell Griffin, Robert Cody, III, and Thakelyn Tate each separately filed a motion to recuse the trial judge in this case. All of the defendants argued that, at the time the grand jury considered their cases, the trial judge had served as a deputy district attorney general in Knox County and that his supervisory role included "review and approval of cases bound over from the General Sessions Court to the Grand Jury [and] approval of cases presented for direct review by the Grand Jury." The defendants argued that the trial judge's prior employment created an appearance of impropriety necessitating recusal.

---

[2] The Court is listing only the charges relevant to the defendants who are parties to this appeal.

As support for their argument at the hearing on this matter,[3] the defendants submitted the trial judge's sworn application for nomination to judicial office, as well as a printed copy of a website for the trial judge.[4] The trial judge's application stated, in pertinent part:

> I currently serve as Deputy District Attorney General for the Sixth Judicial District of Tennessee. Our office is solely responsible for all criminal prosecutions in Knox County. In order to fulfill this prosecutorial function, our office staffs three divisions of the Criminal Court, four criminal divisions of the General Sessions Court, the Grand Jury, and the Juvenile Court. As provided by law, our lawyers may also appear from time to time in Circuit Court, Chancery Court, or the civil division of the General Sessions Court.
>
> In my role as Deputy District Attorney General, I am the direct supervisor for a staff of almost [eighty] employees, including [forty] Assistant District Attorneys General. My supervisory duties include the setting of parameters for plea negotiations, review and approval of cases bound over from the General Sessions Court to the Grand Jury and Criminal Court, approval of cases presented for direct review by the Grandy Jury, regular meetings with personnel to ensure compliance with office policy and ethical standards, and the review of cases for possible appeal to the Court of Criminal Appeals.
>
> . . . .
>
> In addition to my supervisory duties, I have maintained my own caseload during my time as Deputy District Attorney General. I have prosecuted multiple cases to jury trials, including cases of first degree murder, second degree murder, voluntary manslaughter, vehicular homicide, aggravated rape, felony drug charges, aggravated assault, simple assault, and resisting arrest. I have personally prosecuted countless other cases that did not culminate in a jury trial. I have worked with law enforcement officers to coordinate investigative efforts prior to charge. In this capacity, I have worked with state and federal agents to obtain warrants and orders from state court judges.

---

[3] The filings provided in this appeal do not include a transcript of the hearing on the recusal motions. Therefore, we rely upon the trial judge's order denying recusal for an understanding of what occurred at the hearing.

[4] Over the State's objections, the trial judge accepted as evidence at the hearing on these motions both the judicial application and the printed version of the trial judge's campaign website, taking judicial notice "that the printed webpage fairly and accurately represents a page on www.electkylehixson.com."

The website states the following, in pertinent part:

> Kyle has dedicated his career to public service. He has served two stints in the Office of the Knox County District Attorney General. First, he served as an Assistant District Attorney General, where he earned a reputation as a hardworking trial attorney capable of handling complex criminal cases, including homicides and sexual assaults. Second, since 2014, he has served in an executive position as Deputy District Attorney General. Kyle currently supervises all criminal prosecutions in Knox County, a jurisdiction where up to 60,000 new criminal cases arise every year. In addition to managing an office of [eighty] attorneys and support staff, Kyle oversees prosecutions in seven courtrooms plus the Knox County Grand Jury. He works closely with judicial staff and other public offices and agencies to ensure proper operation of the Knox County criminal justice system. Despite his busy management schedule, Kyle still personally participates in some of the Office's most complex criminal litigation in the courtroom.

About Kyle Hixson, http://www.electkylehixson.com/about (last visited Oct. 22, 2020).

On February 20, 2020, the trial judge entered an order denying the defendants' motions for recusal. Initially, the trial judge stated that Assistant District Attorney ("ADA") General TaKisha Fitzgerald, the prosecutor handling the case, had:

> stated that she has no indication that the [trial judge] directly worked on the instant prosecution during his previous employment. Further, ADA Fitzgerald indicated on the record that she does not recall ever discussing the instant case with the [trial judge] during his employment at the District Attorney's Office. These assertions are consistent with the [trial judge]'s recollection of his lack of involvement with this case.

Furthermore, the trial judge stated:

> At all times relevant to these Motions, DAG Allen employed an executive team of Chief Deputy DA Sam K. Lee, Deputy DA Leland L. Price, and Deputy DA Kyle A. Hixson [the trial judge]. This executive team divided administrative responsibilities within the office. These responsibilities included the management of over ten specialized prosecution units, as well as the operation of seven courtrooms with criminal jurisdiction. The executive team oversaw prosecutions within the Juvenile Court for Knox County. Additionally, it managed the DA's counsel to the Knox County Grand Jury. While all members of the executive team held supervisory

- 4 -

authority over all prosecutorial matters within the office, each member of the team was assigned primary responsibility over certain units and prosecutors within those units. At all relevant times, [the trial judge] was not the direct, primary supervisor of ADAs Fitzgerald and Phil Morton and prosecutions within their unit, which included the prosecution of the instant case. Similarly, prosecutors and staff assigned to the Knox County Grand Jury in 2019 did not report directly to [the trial judge] for day-to-day issues. Prosecutors and staff within that unit, as was the case with ADA Fitzgerald's unit, only consulted with [the trial judge] on an as-needed basis on particular cases and policy issues. As stated, such consultations never involved the instant case.

In the [trial judge]'s prior capacity as Deputy DA, he sometimes reviewed proposed charging instruments prior to their submittal to the Knox County Grand Jury. He never reviewed the present charging instruments prior to their presentment to the Grand Jury. He never reviewed or approved the DA's form templates for charging cases pursuant to the Racketeer Influenced and Corrupt Organization (RICO) Act of 1989.

Upon taking office, the [trial judge] issued orders disqualifying himself on several cases that were pending in Criminal Court, Division II. In these cases, the [trial judge] had been directly involved either as a prosecutor or a supervisory prosecutor.

(Footnote omitted).

In analyzing the facts, the trial judge stated:

In this case, it is clear that there is no actual conflict of interest that would prevent the [trial judge] from fairly adjudicating this matter. The [trial judge] never worked on nor discussed the facts of this case with others during his time as a prosecutor. Thus, the question becomes whether "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Bean v. Bailey, 280 S.W.3d 798, 805 (Tenn. 2009) [(quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001))]. The circumstances of this case call for the conclusion that a reasonable person would not question the [trial judge]'s continued involvement in this case as a trial judge.

Similarly to Cormia [v. State, No. E2010-02290-CCA-R3-PC, 2011 WL 5027107, at *14 (Tenn. Crim. App. Oct. 21, 2011,] and Wells [v. State, No. M2002-01303-CCA-R3-PC, 2003 WL 21713423, at *5 (Tenn. Crim.

App. July 23, 2003)], the [trial judge]'s responsibilities as Deputy DA did not include primary supervision of cases within ADA Fitzgerald's unit or the Grand Jury. These cases indicate that a conflict of interest is not imputed to a judge-then-prosecutor simply by virtue of his previous status as a supervisor within the prosecutor's office. While ADA Fitzgerald was free to consult with [the trial judge] when the need arose, that never occurred on this case.

The [d]efendants raise the issue of their pending motions related to the sufficiency of the Presentment in this case. Their argument is that for the trial [judge] to rule in their favor on these motions, [he] must concede that [he] failed in his prior employment as Deputy DA as it relates to supervision of the Grand Jury. This argument fails because the trial [judge] never worked on any of the issues raised by the [d]efendants in their motions regarding the charging instrument.[5] Carried to its logical conclusion, this argument means that the trial [judge] could never rule against the State on a case that pended during his prior employment without somehow impugning his job performance during that time. While this may be true for issues or cases on which the trial [judge] had direct involvement as a prosecutor, this connection is simply too tenuous for all other cases. A reasonable person of ordinary prudence would not question the trial [judge]'s ability to decide an issue when he had no involvement with that issue during his time as a prosecutor.

The [trial judge] is confident that [his] continued involvement in this case would not be injurious to the public's perception of the impartial role of the judiciary. After careful consideration, the [trial judge] concludes that a person of ordinary prudence would not reasonably question the [trial judge]'s impartiality in this case.

(Footnote in original).

---

[5] For the purposes of adjudicating these Motions, the [trial judge] has reviewed the substantive issues raised in the [d]efendants' pending motions, including Defendant Jackson's Motion to Sever Counts, Motion to Dismiss Counts X, XI, and XII, and Motion to Dismiss; Defendant Tate's Motion to Sever Counts, Motion to Dismiss Counts X and XII and Motion to Adopt Sidarius Jackson's Motion to Dismiss Counts X, XI, and XII, and Motion to Dismiss and Motion to Adopt Sidarius Jackson's Motion to Dismiss; Defendant Clark's Motion to Dismiss; and Defendant Cody's Motion to Sever Counts. The [trial judge] finds that these motions—similar to motions heard by the [trial judge] on a daily basis—raise legal issues pertaining to the charging instrument, the relevant statutes, and the application of the Tennessee Rules of Criminal Procedure. Regardless of how the [trial judge] rules on these motions, such a ruling will simply resolve a legal question and will not impugn nor reflect negatively on the Office of the District Attorney General or its practices and procedures.

Thus, the trial judge denied the defendants' motions for recusal. On February 27, 2020, the defendants jointly filed a petition for recusal appeal from the trial judge's denial of recusal. On March 13, 2020, the Court of Criminal Appeals entered an order granting the petition for recusal and ordering that the trial judge be recused in this matter. Order, State v. Griffin, No. E2020-00327-CCA-T10B-CO (Tenn. Crim. App. Mar. 13, 2020). In making its decision, the Court of Criminal Appeals held that the trial judge had used a subjective and not objective standard in his consideration of whether recusal is appropriate. Id. The court focused on his statements made in his judicial application and website in which he described his supervisory responsibilities within the district attorney's office. Id. Ultimately, the court held, "Regardless of what the trial judge subjectively believed, we conclude that these circumstances, whether the result of exaggeration or inadvertence, create an objectively reasonable question of the trial judge's impartiality in this case. Therefore, the trial judge erred in denying the defendants' motions to recuse." Id.

The State then filed an accelerated application for permission to appeal on April 3, 2020, which this Court granted on June 4, 2020. This Court did not find it necessary to hear oral arguments in this matter. See Tenn. Sup. Ct. R. 10B, § 2.07 ("The Supreme Court . . . may decide the appeal without oral argument.").

## Analysis

The State argues that the Court of Criminal Appeals erred in reversing the trial judge's denial of recusal. The defendants, in response, argue that the trial judge's statements made in his judicial application and campaign website would indicate to a reasonable person that he had supervisory authority over this case while he was a deputy district attorney.

Tennessee Supreme Court Rule 10B, section 2.07 provides that this Court shall decide an appeal of a recusal matter under this section "on an expedited basis upon a de novo standard of review."

"Litigants in Tennessee have a fundamental right to a 'fair trial before an impartial tribunal.'" Holsclaw v. Ivy Hall Nursing Home, Inc., 530 S.W.3d 65, 69 (Tenn. 2017) (quoting State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002)); see Tenn. Const. art. VI, § 11 ("No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ."). Tennessee's Rules of Judicial Conduct require judges to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary," Tenn. Sup. Ct. R. 10, RJC 1.2, and to "uphold and apply the law, and . . . perform all duties of judicial office fairly and impartially." Tenn. Sup. Ct. R. 10, RJC 2.2. Our rules define "impartiality" and "impartially" as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Tenn. Sup. Ct. R. 10, Terminology "Impartial."

- 7 -

Tennessee Supreme Court Rule 10, Code of Judicial Conduct, Canon 2, Rule 2.11, states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Bases for which a judge's impartiality might reasonably be questioned include, as are pertinent to this case, when the judge has "a personal bias or prejudice" against any of the parties, "personal knowledge of facts that are in dispute in the proceeding," has "served as lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association," or has "served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding." Tenn. Sup. Ct. R. 10, RJC 2.11 (A)(1), (A)(6)(a) and (b).

"[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias." State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008) (citing Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001). Thus, the test for recusal requires a judge to disqualify himself or herself in any proceeding in which "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. (quoting Davis at 564); see also Clinard v. Blackwood, 46 S.W.3d 177, 187 (Tenn. 2001) ("[B]ecause judges have a privileged understanding of the legal system, they may fail to find an appearance of impropriety where one would be found by a layperson.").

As stated above, a judge's impartiality might reasonably be questioned when the judge:

> served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association; [or] *served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding*, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy[.]

Tenn. Sup. Ct. R. 10, RJC 2.11(A)(6)(a), (b) (emphasis added).

Here, the trial judge served in a governmental position, namely as Deputy District Attorney General, in which he had broad and general supervisory authority over many cases. The pertinent question for purposes of this appeal, however, is whether this supervisory authority amounted to the trial judge participating "personally and substantially" in this case such that his impartiality might reasonably be questioned. Tenn. Sup. Ct. R. 10, RJC 2.11(A)(6)(b).

Our Court of Criminal Appeals has held that mere employment as an assistant district attorney while his or her office prosecuted the case, without more, does not require recusal. See Owens v. State, 13 S.W.3d 742, 757 (Tenn. Crim. App. 1999) (holding that

recusal was not required when "the judge was one of nearly seventy attorneys employed by the District Attorney's Office[;] [h]e was never assigned to prosecute or assist in the prosecution of the case[;] [h]e related that he knew nothing about the facts of this case[;] . . . nor did he know the attorneys involved" (emphasis removed)); State v. Ellis, No. W2000-02242-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 579, at *6[6] (Tenn. Crim. App. July 19, 2001) ("[A] judge need not disqualify himself or herself from hearing a criminal matter which was pending at the time when he or she served as an assistant district attorney in the same judicial district, if the judge neither reviewed, personally prosecuted, nor had any direct involvement in the case.").

Additionally, this Court has held that a judge who served as the district attorney general for a judicial district during the time a defendant was indicted and convicted on other charges need not recuse himself in a later, unrelated criminal matter involving the same criminal defendant. State v. Warner, 649 S.W.2d 580, 581 (Tenn. 1983); see also State v. Conway, 77 S.W.3d 213, 225 (Tenn. Crim. App. 2001) (stating that recusal was not required when "judge was involved in a prior concluded trial as a prosecutor, and the judge was not a material witness to any disputed facts concerning the prior conviction"); State v. Byington, No. E2008-01762-CCA-R3-CD, 2009 WL 5173773, at *4 (Tenn. Crim. App. Dec. 30, 2009) ("The judge was not precluded from presiding over the Defendant's case merely because she had prosecuted him in the past. The Defendant did not show that the judge had a personal prejudice or bias against him. In addition, the record shows that the judge did not rely on knowledge gleaned solely from her position as an assistant district attorney when she sentenced the Defendant."). But see Smith v. State, 357 S.W.3d 322, 341-42 (Tenn. 2011) (holding that, because the trial judge prosecuted the defendant in a separate case at the same time he was being prosecuted in the underlying case and regularly communicated with the prosecutor in the underlying cases, "a person of ordinary prudence would have a reasonable basis for questioning [the trial judge's] impartiality").

In this case, however, the trial judge was a deputy district attorney general, with general and extensive supervisory responsibilities, at the time the defendants were indicted for the charges in the present case. In deciding similar cases, our courts specifically have considered (1) whether the trial judge had direct supervisory authority over the assistant district attorney in the case; and (2) whether the trial judge had any direct involvement in the case. In Wells, 2003 WL 21713423, at *5, the post-conviction judge also had served as a deputy district attorney general at the time of the defendant's original prosecution. The appellate court affirmed the trial judge's denial of recusal, given the trial judge's findings that:

> 1. At the time of the petitioner's original trial, the judge-then-prosecutor was one of two Deputy District Attorneys General in an office having over forty attorneys;

---

[6] The Westlaw citation is not available for this case.

2. Although she had supervisory responsibilities, they did not include child sexual abuse cases;

3. She did not supervise the petitioner's case nor the Assistant District Attorney General who prosecuted the petitioner's case; and

4. She had no contact with the petitioner's case "either directly or indirectly" and was unaware of the case until the filing of the post-conviction petition.

Id. at *4. In holding that recusal was not necessary, the court stated:

> Neither this court nor our state supreme court has addressed the issue of whether recusal is required where the judge-then-prosecutor had general supervisory responsibilities or supervisory responsibilities over the prosecutor or case at issue. "[I]f a judge-previously-prosecutor supervised or even recorded his or her name on documents of record in a case now before the court, the judge may be required to disqualify [himself or herself], even if there is no showing that the judge was involved or had knowledge of the case while prosecutor." Jeffrey M. Shaman, et al., Judicial Conduct and Ethics § 4.16, at 142 (3d ed. 2000). We further recognize that inconvenience to the court or docket concerns play no role in the determination of whether a judge's impartiality can reasonably be questioned.

> However, the undisputed record in this case reflects the judge-then-prosecutor had no supervisory responsibilities over the case or prosecutor, nor any involvement in the case "either directly or indirectly." Had we examined this issue without the benefit of our prior case holdings, we would be inclined to conclude that recusal would be required under an objective standard for a judge-then-prosecutor who was a Deputy District Attorney General with general supervisory responsibilities when the case was tried, even though those responsibilities did not extend to the case at issue. Nevertheless, in spite of our concerns, we are unable to discern a material distinction in this case, as compared to our other cases, that is sufficient to justify a departure from those holdings. Although we invite further appellate review of this issue, we conclude, in light of our prior cases, the post-conviction judge did not err in refusing to recuse herself.

Wells, 2003 WL 21713423, at *5; see also Cormia, 2011 WL 5027107, at *14 ("[S]upervisory authority, without more, is not enough to disqualify a judge. The Petitioner's broad allegation of a 'possible' conflict of interest is not supported by any documentary evidence from trial counsel or any other source and, therefore, a remand is not required on the record before us."); Minor ex rel. Hardin v. State, No. M2001-00545-CCA-R10-PC, 2001 WL 1545498, at *9-10 (Tenn. Crim. App. Dec. 5, 2001) (holding that,

- 10 -

even though the judge had held a supervisory position with the district attorney's office, recusal was not necessary because the judge "had no involvement, whether investigatory or supervisory, with the petitioner's criminal case while she was in the district attorney's office," and the judge "had departed from the district attorney's office over one year prior to the indictment's return").

Other states also have considered the supervisory authority when deciding whether a prosecutor later serving as judge should recuse himself or herself from presiding over the criminal matter. See, e.g., Williams v. Pennsylvania, 136 S.Ct. 1899, 1907-09 (2016) (holding that recusal was required when the judge, in his prior supervisory role, authorized the prosecutor assigned to the case to seek the death penalty, stating that the judge's "willingness to take personal responsibility for the death sentences obtained during his tenure as district attorney indicate that, in his own view, he played a meaningful role in those sentencing decisions and considered his involvement to be an important duty of his office"); People v. Julien, 47 P.3d 1194, 1198 (Colo. 2002) ("[A] judge must disqualify himself or herself sua sponte or in response to a disqualification motion, if facts exist tying the judge to . . . some supervisory role over the attorneys who are prosecuting the case[.]"); State v. Connolly, 930 So.2d 951, 954 (La. 2006) (stating that the court had never "required the disqualification of a judge solely on the basis of his or her coincidental employment in the District Attorney's office at the time the defendant was charged in a case over which the judge had no supervision or control before assuming the bench" (citation omitted)).

Moreover, other jurisdictions have considered whether any evidence showed the judge actually was involved in the case in the judge's prior prosecutorial supervisory role. See, e.g., People v. Burnett, 392 N.E.2d 235, 238 (Ill. App. 1st 1979) ("In explaining his prior position as an Assistant State's Attorney, the trial judge also stated that he 'had no knowledge whatsoever of the case and had never seen the case or handled the case or acted as counsel.' Defendant has not attempted to disprove the statement or show that the trial judge was in any way ever actually involved with the prosecution of his case. . . . Because the trial judge's former supervisory capacity as an Assistant State's Attorney does not amount to his having 'acted as counsel' under Rule 67(c), and because there is absolutely no evidence presented that there were any signs of a conflict or partiality, we reject defendant's contention that the trial judge erred in not disqualifying himself from hearing the case."); Rodriguez v. State, 489 S.W.2d 121, 123 (Tex. Crim. App. 1972) (holding that the judge was not required to recuse himself from the defendant's murder case, even though the judge was First Assistant Criminal District Attorney in charge of capital prosecutions at the time the alleged offense occurred and when the complaint was filed and stating that nothing in the record indicated that the judge had "actually investigated, advised or participated in this case in any way" in his former role); Lee v. State, 555 S.W.2d 121, 125 (Tex. Crim. App. 1977) (holding that recusal was required when the judge had written a letter to defense counsel in his prior role as chief of the trial division in the district attorney's office indicating that the judge had reviewed the case and had advised others in his office regarding the case).

In the present case, the defendants based the recusal motions primarily on statements made by the trial judge in his judicial application and on his campaign website. In his judicial application, he states, in pertinent part:

> I currently serve as Deputy District Attorney General for the Sixth Judicial District of Tennessee. Our office is solely responsible for all criminal prosecutions in Knox County. In order to fulfill this prosecutorial function, our office staffs three divisions of the Criminal Court, four criminal divisions of the General Sessions Court, the Grand Jury, and the Juvenile Court. As provided by law, our lawyers may also appear from time to time in Circuit Court, Chancery Court, or the civil division of the General Sessions Court.

> In my role as Deputy District Attorney General, I am the direct supervisor for a staff of almost [eighty] employees, including [forty] Assistant District Attorneys General. My supervisory duties include the setting of parameters for plea negotiations, review and approval of cases bound over from the General Sessions Court to the Grand Jury and Criminal Court, approval of cases presented for direct review by the Grandy Jury, regular meetings with personnel to ensure compliance with office policy and ethical standards, and the review of cases for possible appeal to the Court of Criminal Appeals.

On his campaign website, the trial judge described his role as supervising "all criminal prosecutions in Knox County, a jurisdiction where up to 60,000 new criminal cases arise every year."

In his order denying recusal, the trial judge explained that he had some general supervisory responsibilities during his time as Deputy District Attorney General, but he had no knowledge or any involvement, supervisory or otherwise, in this case. The trial judge's explanation was corroborated by ADA Fitzgerald.

We find credible the trial judge's explanations in the order denying recusal that he was not the direct supervisor of ADA Fitzgerald and that he did not participate personally or substantially in the present case during his time as a Deputy District Attorney General. Although his campaign website states that he supervised "all" criminal prosecutions in Knox County, a reasonable person would be hard-pressed to believe that participation in up to 60,000 new criminal cases a year was "personal and substantial."[7]

---

[7] Although we conclude in this particular instance that the trial judge's explanation is credible and that recusal is not required in this case, we also use this opportunity to caution applicants and candidates for judicial positions about potential adverse consequences arising from statements in applications or campaigns. Applicants and candidates must carefully refrain from overstating past experiences and

The Court of Criminal Appeals agreed with the defendants' argument below that "[t]he reasonable person cannot be viewed as a person who holds the judge's personal knowledge (otherwise the judge himself would be the standard)." Petition for Recusal Appeal at 7, Griffin, No. E2020-00327-CCA-T10B-CO. However, the analysis for impartiality adopted by this Court in fact is whether "a person of ordinary prudence in the judge's position, *knowing all of the facts known to the judge*, would find a reasonable basis for questioning the judge's impartiality." Cannon, 254 S.W.3d at 307 (emphasis added) (quoting Liberty Mut. Ins. Co., 38 S.W.3d at 564). Thus, knowing all the facts known to the trial judge in this case, including that he did not supervise the ADA in this case and had no actual involvement with this case, a person of ordinary prudence would not find a reasonable basis for questioning the trial judge's impartiality. See id. Accordingly, the trial judge properly denied the motion for recusal in this case.

## CONCLUSION

We hold that the trial judge properly denied the motion for recusal because a person of ordinary prudence in the judge's position, knowing all of the facts known to the trial judge, would not find a reasonable basis for questioning the judge's impartiality. Accordingly, we reverse the decision of the Court of Criminal Appeals and reinstate the judgment of the trial judge denying recusal.

PER CURIAM

---

responsibilities. Such actions can have significant unintended consequences. Our decision today in no way should be construed as condoning the use of overstatements in judicial applications or campaigns.