IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 15, 2022

## STATE OF TENNESSEE v. MARK DEWAYNE MCMURRY

**Appeal from the Criminal Court for Sumner County**
**No. 83CC1-2020-CR-304  Dee David Gay, Judge**

——————————————————

### No. M2021-00223-CCA-R3-CD

——————————————————

Defendant, Mark Dewayne McMurry, was indicted for and pleaded guilty to robbery. Prior to sentencing, Defendant moved to recuse the trial judge. The trial court denied Defendant's motion for recusal and, following a sentencing hearing, sentenced Defendant as a Range II multiple offender to serve 10 years in incarceration. In this appeal as of right, Defendant challenges his sentence as excessive and argues that the trial court should have granted his motion for recusal. Following our careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Ethan C. Ingham (on appeal), Nashville, Tennessee; Jocelyn Mims (at the motion for recusal hearing and sentencing hearing), Gallatin, Tennessee, for the appellant, Mark Dewayne McMurry.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Ray Whitley, District Attorney General; Tara Wyllie and Lytle Anthony James, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

***Factual and procedural background***

On November 23, 2020, Defendant entered an open guilty plea to robbery. Pursuant to the negotiated plea agreement, Defendant was to be sentenced as a Range II multiple offender. On January 15, 2021, Defendant filed a motion to recuse the trial judge from sentencing him on the grounds that the trial judge, while serving as an assistant district attorney general in 1990, prosecuted Defendant in a highly publicized trial on three charges of sexual offenses. Defendant averred that the trial judge was prejudiced against him because, during the trial, the trial judge/former prosecutor stated, "[t]here is a dark side to [Defendant] which teachers and coaches don't see, and when that dark side surfaces, no young girl is safe." Defendant's convictions in that case were overturned by the Tennessee Supreme Court.[1] Defendant also alleged prejudice on the grounds that the trial judge prosecuted him on a drug charge in 2002 for which conviction he was sentenced as a Range III persistent offender to a sentence of split confinement with a lengthy period of probation. Defendant pointed out that, by contrast, he was convicted on the same day in a forgery and theft case prosecuted by another assistant district attorney and was sentenced as a Range II multiple offender. Finally, Defendant alleged that the trial judge showed prejudice against Defendant when he remarked at Defendant's arraignment in this case that it had "been a while" since Defendant was before the court.

The trial court conducted a hearing on Defendant's motion to recuse on January 25, 2021, the day of Defendant's scheduled sentencing hearing. Defendant testified that the trial judge prosecuted him for three sexual offenses in 1990. At the time of his 1990 trial, Defendant "was a star football player, basketball [player], and [he] played every sport." He testified that the media covered his trial extensively. Defendant believed that the trial judge/former prosecutor "had something against [him]." Defendant could not remember "too much about" the trial itself, but he appealed his convictions, and the Tennessee Supreme Court reversed them. Defendant also testified regarding his 2002 convictions in two separate cases that were prosecuted by different assistant district attorneys. He testified, "I know I got a bunch of time back then for charges that should have been dismissed."

Defendant recalled that, at the arraignment in this case, the trial judge remembered him and commented, "it's been a long time." Defendant testified, "I've always felt like Judge Gay wanted to see me behind bars." Defendant testified that he "just wanted to be treated fairly." He affirmed that it was not his intention to delay the proceedings in this case and that he did not file the motion to recuse for any improper purpose.

---

[1] In *State v. In the Matter of Mark McMurry*, No. 01S01-9205-CV-00059, 1993 WL 292527 (Tenn. July 12, 1993) (opinion withdrawn from publication), our supreme court reversed the ruling of the trial court allowing the State to introduce evidence of Defendant's alleged prior sexual misconduct, concluding that the trial court erred in determining that the prior bad acts were part of a common scheme or plan. The reversal had nothing to do with the prosecutor's remarks.

A transcript of Defendant's arraignment in this case reflects that the trial court stated to Defendant, "I haven't seen you in a long time, sir. Are you doing okay?" Defense counsel informed the trial court that she was unable to obtain the court file from Defendant's 1990 trial. Defense counsel did not admit as exhibits to the hearing any news articles or other media coverage of the trial. Counsel stated that when she received the presentence report for the current matter, she learned of Defendant's 2002 convictions. She discovered that Defendant was sentenced as a Range III offender in the case on which the trial judge was the prosecutor and that, in two other cases disposed of on the same day and prosecuted by another assistant district attorney, Defendant was sentenced as a Range II offender.

At the conclusion of the recusal hearing, the trial court noted that Defendant's 1990 trial was "highly publicized" because Defendant was recognized for his athletic ability. The trial court stated, "He's one of the best running backs that's ever come out of Sumner County, and I found myself in a difficult position as a prosecutor in this case." The trial court stated:

> Now, the arena in this particular case is the court room where all the – everything is laid out in court, and I am an advocate for three young child abuse victims, in my opinion, at the time, and what I say in court does not necessarily reflect my personal opinion of a defendant. We must be advocates, [defense counsel].
>
> And for those times that I prosecuted and tried those cases involving sexual abuse of children, you cannot help but get tied up in the lives of those young victims. Some I never forget because of the trauma, but that doesn't mean that I have a lifelong bias against the defendant that caused it. My statements were legal, my statements were professional, and that's what we do in this arena.

In its written order denying Defendant's motion, the trial court explicitly stated that it could preside over Defendant's sentencing "fairly, impartially, and without bias." The trial court noted that Defendant's motion did not procedurally comply with Tennessee Supreme Court Rule 10B in that Defendant did not support the motion with an affidavit and failed to state that the motion was not being presented for any improper purpose. Further, the motion was not promptly filed, as contemplated by the rule.[2] The trial court noted that Defendant did not allege bias during the seven months that his case was pending

---

[2] "'[R]ecusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality.'" *Duke v. Duke*, 398 S.W.3d 665, 670 (Tenn. Ct. App. 2012) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)); *see also* Tenn. Sup. Ct. R. 10 B § 1.01.

prior to sentencing. Nevertheless, the trial court stated in its order that it "overlooked the issue and held an evidentiary hearing."

The trial court found that when prosecuting Defendant "in 1990 in a highly publicized trial[,]" the trial judge "was merely doing his job and performing his statutory duties in the prosecution of that case." The order states that during the trial judge's time as an assistant district attorney, he "prosecuted many defendants for many different crimes" and "there was no evidence anywhere that would lead a reasonable person to conclude that the [c]ourt was biased or prejudiced years later as a judge against [D]efendant in 2020 other than he was merely performing his duties as an Assistant District Attorney in those prosecutions." Relative to the trial court's comment to Defendant at Defendant's arraignment, the trial court found that it "was merely a greeting and nothing else."

The trial court concluded that there was no subjective or objective basis for recusal and denied Defendant's motion.

### *Sentencing Hearing*

A sentencing hearing was conducted immediately following the recusal hearing. Gallatin Police Sergeant Michael Tinker testified that he investigated the case. He interviewed the victim, who stated that she was at her niece's residence and had gone to her car to get groceries out of the vehicle when a black male drove up beside her and made "small talk." The man then approached the victim and grabbed her purse. She resisted, and he pushed her to the ground, took her purse, and fled. The victim viewed a six-person photographic lineup and eliminated three people but was unable to identify Defendant.

While Sergeant Tinker was interviewing the victim, someone approached a patrol officer, who was responding to an unrelated incident "down the street" from where the robbery occurred, and asked the officer if police were looking for Defendant. That person stated that Defendant had just been at his or her house "in a panic" and left in a vehicle that was similar to the vehicle described by the victim. Sergeant Tinker pinged the victim's cell phone to an address where Defendant had a "history." Police located Defendant at the residence. Police found a wallet containing Defendant's identification and the victim's credit cards among a pile of Defendant's belongings. Police also found the victim's cell phone in a vehicle that another resident of the house stated he had loaned Defendant on the night of the robbery.

In a recorded conversation at the jail, Defendant confessed to Sergeant Tinker, stating that he was high on cocaine and methamphetamine at the time of the robbery and "saw an opportunity." Defendant stated that he was remorseful for what he had done.

- 4 -

Defendant testified that his drugs of choice were marijuana and cocaine. On the day of the robbery, a friend had mixed methamphetamine into his drugs without his knowledge. Defendant testified that he had sought help for his drug addiction prior to the robbery. He "realized he had a problem" and called "a few rehabilitation centers trying to get in." Defendant testified that his "health had failed [him]" and that he had suffered two heart attacks and kidney failure and had undergone prostate surgery. Defendant said, "things weren't working out" and he "chose to get high."

Defendant testified that while awaiting sentencing, he was accepted into the Men of Valor rehabilitation program. Defendant stated that he suffered from Post-Traumatic Stress Disorder ("PTSD") as a result of having been convicted of criminally negligent homicide in 2014 and having served a 42-month sentence. Defendant stated his desire to further his education by completing college and obtaining a master's degree. Defendant expressed his remorse for the offense in this case, stating that he "wasn't in [his] right mind" and that he "never would have done anything like that to an elderly lady." Defendant denied pushing the victim. He testified that he "snatched her purse" and "took off."

Upon questioning by the trial court, Defendant acknowledged that he "used to sell drugs." Regarding Defendant's PTSD diagnosis, the trial court asked, "Did you have some guilt issues back in 1990, through that period of time, that you were not able to really complete what you wanted to do regarding your athletic ability?" Defendant answered, "It caused me to get off track of what I really wanted to do." The trial court noted that Defendant had "probably one of the worst records" it had ever seen. Defendant acknowledged that he had prior parole and probation violations. Regarding his prior conviction for criminally negligent homicide, Defendant stated that the victim jumped in his car, put a gun to his head, and pulled the trigger three times. Defendant stated that he grabbed the gun from the victim and it "went off[,]" killing the victim.

At the conclusion of the sentencing hearing, the trial court stated that it had considered the presentence report, the evidence presented at the sentencing hearing, the principles of sentencing, and the arguments of counsel. The court discussed the purposes and principles of the Sentencing Act as they related to the facts of this case, noting that "the foremost purpose . . . is to promote justice."

The court applied the following enhancement factors to Defendant's sentence: Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and the victim of the offense was particularly vulnerable because of age. The trial court found no applicable mitigating factors. In considering the seriousness of the offense, the court stated, "just how serious is the offense of robbery of a 73-year-old lady, innocent as the driven snow, doing what our Declaration of Independence says about our country, that we have been given certain God-

given rights of life, liberty, and the pursuit of happiness. This lady was pursing those rights and this happens to her." The trial court also considered the need to promote respect for the law, the need for deterrence, and Defendant's potential for rehabilitation, and the court determined that "none of those are good for [Defendant]."

The trial court stated that Defendant had wasted 24 years of his life committing crimes. The court further stated:

> I wish you were a Range I offender to where we wouldn't have to give you so much time. I wish that you had grabbed at your early age the importance of athletics and what you were pursuing. But after making mistakes, you never corrected it. You never developed into what you could be, and that's your fault.

The trial court imposed the maximum sentence within the range of 10 years' incarceration, concluding that confinement was necessary based on Defendant's long history of criminal conduct.

## *Analysis*

### *I. Recusal*

Defendant contends that the trial judge committed reversible error by failing to recuse himself because he had prosecuted Defendant in 1990 and in 2002 as an assistant district attorney general. The State responds that the trial judge properly denied the motion because he expressly stated that he was able to preside impartially over Defendant's sentencing and because a person of ordinary prudence in the judge's position would not find a reasonable basis for questioning his impartiality.

"A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, R.J.C. 2.11 (A). Bases for which a judge's impartiality might reasonably be questioned include, as are pertinent to this case, when the judge has "a personal bias or prejudice" against any of the parties, "personal knowledge of facts that are in dispute in the proceeding," has "served as lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association," or has "served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding." Tenn. Sup. Ct. R. 10, R.J.C. 2.11 (A)(1), (A)(6)(a) and (b). "'[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias.'" *State v. Clark*, 610 S.W.3d 739 (Tenn. 2020) (quoting *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008)).

We review a trial court's denial of a motion to recuse de novo. Tenn. R. Sup. Ct. 10B § 2.01.

In three companion cases recently decided by our supreme court, the co-defendants moved to recuse the trial judge, who previously served as a deputy district attorney general and had supervisory authority over the defendants' cases. *State v. Griffin*, 610 S.W.3d 752 (Tenn. 2020); *State v. Clark*, 610 S.W.3d 739 (Tenn. 2020); *State v. Styles*, 610 S.W.3d 746 (Tenn. 2020). The trial judge in those cases was serving as the Deputy District Attorney General at the time the defendants were indicted in February of 2019. In December of 2019, he was appointed to serve as a trial judge in the Knox County Criminal Court, and he was assigned to preside over the defendants' cases. Prior to his appointment to the bench, the trial judge had no direct involvement in the defendants' cases and served only in a supervisory capacity in his role as a prosecutor.

Our supreme court held that broad supervisory authority, without some evidence that the judge participated personally and substantially in the case, was an insufficient reason to reasonably question the judge's impartiality. The court noted that the analysis to be conducted "is whether a person of ordinary prudence in the judge's position, *knowing all the facts known to the judge*, would find a reasonable basis for questioning the judge's impartiality." *Griffin*, 610 S.W.3d at 762 (internal quotations omitted) (emphasis in original). In *Griffin*, *Clark*, and *Styles*, the supreme court held that the defendants failed to establish that the trial judge's supervisory responsibilities in his role as a deputy district attorney general were personal or substantial in the defendants' cases. *Id*.

Unlike in the cases cited above, the trial judge in this case served in more than a supervisory capacity – he was directly and substantially involved in the prosecution of Defendant's prior case. However, also unlike the cases cited above, the case in which the trial judge prosecuted Defendant was more than 30 years prior and, therefore, not the "matter in controversy." Tenn. Sup. Ct. R. 10, R.J.C. 2.11 (A)(6)(b). In the present case, there is no question that the trial judge was actively involved in the prosecution of Defendant in 1990; however, there is nothing in the record to show actual bias or give reason to question the trial judge's subjective determination that he should not be required to recuse himself for lack of impartiality in determining Defendant's sentence for his 2021 conviction.

The trial judge explicitly stated that he could preside over Defendant's sentencing "fairly, impartially, and without bias." Defendant alleged in his motion for recusal that the trial judge made statements during Defendant's 1990 trial to the effect that "there is a dark side to [Defendant] which teachers and coaches don't see, and when the dark side surfaces, no young girl is safe." Although defense counsel referenced media coverage of Defendant's 1990 trial, no such evidence was introduced. The trial court explained that his

actions and statements as a prosecutor in the 1990 trial were "legal" and "professional" only and did not reflect his "personal opinion" about Defendant or indicate any lingering bias or prejudice toward Defendant.

Defendant asserts that the trial judge "still carries the 1990 high profile case in which he prosecuted [Defendant] with him," creating an appearance of impartiality. Defendant points to statements by the trial court at sentencing that reference Defendant's 1990 convictions, including the trial court's comment that Defendant was "an incredible athlete" and "extremely strong" in discussing the relative weakness and vulnerability of the victim and the trial court's question to Defendant about whether he had "some guilt issues back in 1990" as a reason for Defendant's subsequent criminal episodes.

We disagree with Defendant's interpretation of any of the trial judge's actions or comments as an indication of his hostility, bias, prejudice, or prejudgment of Defendant in the instant case. *See State v. Warner*, 649 S.W.2d 580 (Tenn. 1983), *rehearing denied* (April 18, 1983). Defendant has failed to establish that the trial judge relied on his knowledge gleaned from his prior prosecutions of Defendant in sentencing him. Despite Defendant's assertion that the trial court "applied enhancing factors or gave the appearance that the enhancing factors which [were] known only to the [t]rial [c]ourt from the prior prosecutions" of Defendant, the record shows that the trial court made findings at sentencing based on the evidence and argument presented at sentencing. Defendant has likewise failed to establish that the trial judge's impartiality should be questioned based on the supreme court's having overturned Defendant's 1990 convictions or the trial judge's greeting Defendant at his arraignment. We thus conclude that recusal was not objectively required. Defendant is not entitled to relief on this issue.

## II. Sentencing

Defendant also asserts that the trial court abused its discretion in imposing a sentence of 10 years, the maximum sentence within the applicable range. The State responds that the trial court properly sentenced Defendant. We agree with the State.

This Court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant

made on his own behalf, the result of the validated risk and needs assessment, and the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(b), -103.

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

Here, the trial court considered the relevant principles and sentenced Defendant to a within-range sentence for his conviction. Pursuant to the plea agreement, Defendant was sentenced as a Range II offender convicted of a Class C felony, with a range of punishment of six to 10 years. *See* T.C.A. §§ 39-13-401(b), 40-35-112(b)(3).

Defendant argues that the trial court abused its discretion by failing to find any factors in mitigation despite proof of Defendant's "failing health" and his acceptance into a rehabilitation program. Although Defendant asserts that the trial court relied on knowledge gained about Defendant from the trial judge's prosecution of Defendant in 1990, Defendant does not contest, and we conclude that the record fully supports, the trial court's application of two enhancement factors: that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and that the victim of the offense was particularly vulnerable because of age. *See Id.* § 40-35-114(1) and (4).

"The application of a single enhancement factor can justify an enhanced sentence." *State v. John M. Banks*, No. M2019-00017-CCA-R3-CD, 2020 WL 5015888, at *10 (Tenn. Crim. App. Aug. 25, 2020) (citing *State v. Bolling*, 75 S.W.3d 418, 421 (Tenn. Crim. App. 2001)), *perm. app. denied* (Tenn. Dec. 2, 2020). We also point out that the trial court would have been within its discretion to impose a maximum in-range sentence without finding any applicable enhancement factors, "as long as there are reasons consistent with the statutory purposes and principles of sentencing." *State v. Christopher Scott Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013) (citing *Bise*, 380 S.W.3d at 706; *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008)), *no perm. app. filed*.

We conclude that the trial court properly sentenced Defendant. The trial court considered the relevant principles and sentenced Defendant to a within-range sentence.

Based on the evidence presented at the sentencing hearing and Defendant's criminal history provided in the presentence report, the sentence imposed was not excessive, and the trial court did not abuse its discretion. Accordingly, we conclude that Defendant is not entitled to relief as to this issue.

### III. Cumulative Error

Finally, Defendant asks this Court to reverse his conviction on the basis of cumulative error. The cumulative error doctrine embodies the idea that a multiplicity of errors, though individually harmless, may in the aggregate violate a defendant's due process right to a fair trial. *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010). To warrant reversal of a conviction or sentence under the doctrine of cumulative error, there must have been more than one error committed by the trial court. *State v. Herron*, 461 S.W.3d 890, 910 (Tenn. 2015) (citing *Hester*, 324 S.W.3d at 77). Defendant has failed to establish any individual error. No error renders the cumulative error doctrine barren.

### CONCLUSION

After a careful review of the record, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE