IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 9, 2024 Session

## JOHN DOE CORP. v. KENNERLY, MONTGOMERY & FINLEY, P.C.

**Appeal from the Circuit Court for Knox County**
**No. 2-343-20          Christopher D. Heagerty, Jr., Chancellor**

_____

### No. E2023-00236-COA-R3-CV
_____

This is a legal malpractice suit filed by John Doe Corporation ("Plaintiff") against its former counsel, Kennerly, Montgomery & Finley, P.C. ("Defendant"). The case arises from the expiration of a judgment obtained by Plaintiff against a defendant ("the third party") in a suit that concluded more than a decade ago, and Defendant's alleged failure to advise Plaintiff of the judgment's impending expiration. The legal malpractice action was before Judge William T. Ailor, who had represented the third party in the underlying suit before becoming a judge. Judge Ailor granted Defendant's motion to dismiss based on Plaintiff's failure to bring the action within the time set by the relevant statute of limitations. After becoming aware of Plaintiff's and the third party's identities, Judge Ailor recused himself while Plaintiff's motion to alter or amend the judgment was pending. Plaintiff sought to void the judgment dismissing the case. Chancellor Christopher D. Heagerty was assigned to sit by interchange over the case and denied Plaintiff's motion. Plaintiff appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

H. Anthony Duncan, Nashville, Tennessee, for the appellant, John Doe Corp.

Daniel J. Ripper, Chattanooga, Tennessee, for the appellee, Kennerly, Montgomery & Finley, P.C.

## OPINION

## Background

On October 28, 2020, Plaintiff filed a complaint in the Circuit Court for Knox County ("the Trial Court") which initially was assigned to Judge Ailor. Plaintiff's complaint alleges that Defendant's legal malpractice had impaired its ability to collect money on its judgment obtained against the third party over ten years ago. Plaintiff claimed that Defendant had failed to inform Plaintiff that the judgment would expire after ten years or that it needed to seek to extend the judgment prior to its expiration. Plaintiff initiated its action under a pseudonymous name because Plaintiff was unsure whether the third party knew that Plaintiff's judgment had expired and did not want to alert the third party to this fact.[1] Plaintiff originally was represented by attorney Mark N. Foster.

After filing an answer to Plaintiff's complaint, Defendant filed a motion to dismiss and memorandum of law in support on June 3, 2021. Defendant claimed that Plaintiff had failed to state a claim upon which relief could be granted, failed to bring suit within the applicable statute of limitations, and failed to bring suit within the applicable statute of repose.

On July 7, 2021, an agreed order was entered substituting H. Anthony Duncan for Mr. Foster as Plaintiff's counsel. On July 13, 2021, Defendant filed a second motion to dismiss and memorandum of law. These were identical to the first motion and memorandum with the exception of the certificate of service which reflected service upon Mr. Duncan instead of Mr. Foster.

On September 13, 2021, Judge Ailor entered an order, granting Defendant's motion to dismiss. Judge Ailor provided the following explanation:

> Defendant Kennerly, Montgomery & Finley, PC's *Motion to Dismiss* was filed on July 13, 2021. As a result of the ongoing COVID-19 pandemic, this Court has been operating under the guidelines as set forth in the Amended COVID-19 Comprehensive Plan of Action ("the COVID Plan,") for the 6th Judicial District as approved by the Tennessee Supreme Court on May 5, 2020. In relevant part, ". . . for any motion filed after May 1, any party opposing the motion will have thirty days to file a written response and **thereafter the Court may choose to rule without need for a hearing**." (Emphasis added; the COVID Plan, p.3.)

---

[1] With its motion to alter or amend the judgment, Plaintiff included an exhibit, revealing that the third party had discovered that the judgment had lapsed and sought an order confirming and declaring that the judgment was no longer effective in a motion filed on September 3, 2021, in the Chancery Court for Knox County.

After review of the Motion and the Complaint, and the file as a whole, including the lack of response from the Plaintiff, the Court is of the opinion that the statute of limitation expired and, therefore, Defendant's *Motion to Dismiss* should be GRANTED.

On October 6, 2021, Plaintiff filed a motion to alter or amend the judgment pursuant to Tennessee Rule of Civil Procedure 59.04, along with a memorandum and a declaration by Mr. Duncan. Plaintiff complained that Judge Ailor had granted Defendant's motion to dismiss "while it was pending, without notice or a hearing, via an order entered *sua sponte*." Plaintiff claimed that the dismissal violated its procedural due process rights under the United States and Tennessee Constitutions because it was not afforded a "hearing or meaningful opportunity to be heard." Plaintiff contested the 6th Judicial District's "Amended COVID-19 Comprehensive Plan of Action" insofar as it permitted dismissal of a suit without a hearing. The relevant provision provided: "For any other motion filed after May 1, any party opposing the motion will have thirty days to file a written response and thereafter the Court may choose to rule without need for a hearing." Plaintiff claimed that Judge Ailor should have notified the parties of his intent to dismiss the case and scheduled a hearing.

Plaintiff further claimed that Mr. Duncan had recently discovered that Judge Ailor was disqualified from presiding over the case and that Mr. Duncan had been in the process of drafting a motion for recusal at the time the motion to dismiss was granted. In his declaration, Mr. Duncan stated that in performing his due diligence in researching the case, he had discovered that Judge Ailor represented the third party in the previous case before becoming a judge. Plaintiff requested that Judge Ailor "return the case to the *status quo ante*" and then recuse himself.

On January 31, 2022, Plaintiff filed a motion for mandatory recusal with a memorandum of law in support. After a hearing in April 2022, Judge Ailor recused himself from the case in an order, explaining:

Based on the arguments of counsel and the record as a whole, the court finds that when this matter was filed there was nothing in the record to identify who the John Doe Corporation was or who the third-party debtor was that Defendant was collecting from and therefore the Court could not have had any knowledge of who these unidentified entities/individuals were when it ruled on the Defendant's Motion to Dismiss. Had the Court been given the identity of these unidentified entities/individuals, as is this Court's custom, the Court would have conducted a status conference to inform counsel of the Court's former relationship, if any, with any of the parties involved so that the parties could file whatever motion they deemed appropriate. As that information was not given to the Court, the Court was

- 3 -

not given the opportunity to hold a status conference and as such, the Court ruled pursuant to the 6th Judicial District's COVID Plan as approved by the Tennessee Supreme Court as well as the Local Rules of Court for Knox County Tennessee. Now being advised of the one of the unnamed individuals in this case was a former client of this Court's and the John Doe Corporation, Plaintiff, sued this Court's former client to collect a debt and as this former relationship might call into question the Court's impartiality even though the Court has had no contact with that matter for over 7 years and to ensure the integrity of and public confidence in the judicial system, this Court will Grant the Plaintiff's Motion to Recuse.

Chancellor Heagerty was then appointed to sit by interchange over the case.

Plaintiff filed a supplemental brief in support of its motion to alter or amend the judgment with election to void the judgment. Plaintiff argued that because Judge Ailor had been disqualified from presiding over the case, Judge Ailor's judgment dismissing the case was a "nullity" and "voidable."

Defendant filed a supplemental brief in response, arguing that Judge Ailor's recusal was a discretionary decision and not one required by law. Defendant contended that Judge Ailor was never counsel to either party or counsel in this lawsuit. Judge Ailor's prior involvement was limited to the representation of the third party, who was not a party to the current action. Defendant argued that Judge Ailor's relation to the case was only tangential and that the circumstances surrounding his involvement did not fall within the enumerated grounds for incompetency found in Tenn. Code Ann. § 17-2-101. Defendant further argued that Plaintiff had waived his argument that the judgment should be voided because he did not promptly seek Judge Ailor's recusal.

After a hearing on January 9, 2023, Chancellor Heagerty entered a final judgment on February 15, 2023, and denied Plaintiff's motion to alter or amend the judgment with the following explanation:

> Plaintiff insists that the ORDER ON DEFENDANT'S MOTION TO DISMISS entered by Judge Ailor in this case is void due to his involvement in the "underlying case" referenced above. In that case, Judge Ailor represented judgment debtors, who are not named as parties herein. Plaintiff bases this argument upon Article VI, § 11, of the *Tennessee Constitution* and *Tenn. Code Ann.* § 17-2-101. The referenced provisions state, in pertinent part, as follows:
>
> > No judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected

with him by affinity of consanguinity, within such degrees as may be prescribed by law, ***or in which he may have been of counsel***, or in which he may have presided in any Inferior Court, except by consent of all the parties.

*Tennessee Constitution*, Art. VI, § 11 (emphasis added). The competency of judges and chancellors is further circumscribed by *Tenn. Code Ann.* § 17-2-101(3), which provides that: "No judge or chancellor shall be competent, except by consent of all parties, to sit in the following cases: . . . . . . (3) Where the judge or chancellor has been of counsel in the cause[.]" Plaintiff argues that Judge Ailor's representation of a judgment debtor in a case giving rise to this legal malpractice claim against the law firm of the judgment creditor somehow renders him incompetent to sit as judge in this case, and thus renders the judgment of dismissal of this legal malpractice case a nullity. Plaintiff's argument presumes, without citation of authority, that the "underlying" collection case and the legal malpractice case at bar would be deemed the "same case" for the purposes of analysis under the constitutional provision and the referenced statute. The issue in this regard is far from clear. See *State v. Warner*, 649 S.W.2d 580, 581 (Tenn. 1983) ("We agree with the intermediate court that the constitutional disqualification is limited by its very language to the ***cause on trial and does not include prior concluded trials***. . . .") (emphasis in original); see also *State v. Conway*, 77 S.W.3d 213, 225 (Tenn. Crim. App. 2001) (Following *State v. Warner*, supra).

In support of this argument, Plaintiff relies upon *Reams v. Kearns*, 45 Tenn. (5 Cold.) 217, 219-20 (1867) which states that a judgment rendered by a judge who was once of counsel in the same action is a "mere nullity." While illustrative of the prior law on this subject, careful research reveals *Reams* was later overruled on this point. See *Holmes v. Eason*, 76 Tenn. (8 Lea) 754, 758-62 (1882). In fact, a decisional history of this "issue," and the *Reams* case, is set forth in *Radford Trust Co. v. East Tennessee Lumber Co.*, 92 Tenn. (8 Pickle) 126, 21 S.W. 329, 331 (1893), which lends the following additional analysis to the problem before this Court:

> The right to a trial by an impartial judge is a very high right, but these cases establish, not only that one may consent to a trial before a disqualified judge, but that if he fails to object he is conclusively presumed to consent.

Counsel for Plaintiff admits that he had knowledge of the grounds which allegedly required Judge Ailor's recusal prior to the time when the case was

dismissed on September 13, 2021. Plaintiff's failure to bring this issue before the Court prior to the time when the judgment of dismissal was rendered, and at which time counsel had full knowledge of the existence of these grounds, constitutes a waiver of Plaintiff's right to object and also gives rise to a conclusive presumption that the case was heard with the non-objecting party's consent to the alleged grounds for disqualification. See *Radford Trust Co. v. East Tennessee Lumber Co.*, 21 S.W. at 331. The Court further finds that the "underlying" collection case and the case at bar do not constitute the "same case" for the purposes of the analysis of the facts under Article VI, § 11 of the *Tennessee Constitution* and *Tenn. Code Ann.* § 17-2-101(3). See *Order of Recusal* filed April 5, 2022 (The Court acknowledging that it had no knowledge of the identity of the parties to the "underlying case" when ruling upon the MOTION TO DISMISS); see also *State v. Byington*, 2009 WL 5173773 at *4 (Tenn. Crim. App. 2009).

\* \* \*

Plaintiff also takes issue with the manner in which the case was dismissed by the Court, claiming that the procedures employed by the Court are violative of the Plaintiff's Due Process rights under both the State and Federal Constitutions. Plaintiff hinges this argument upon the contention that "[t]his Court granted Defendant's Motion to Dismiss while it was pending, without notice or hearing, via an order entered *sua sponte* on September 13, 2021."

Plaintiff's argument in this regard is without merit.

(Certain citations to the record and footnotes omitted.) Chancellor Heagerty denied Plaintiff's motion to alter or amend the judgment and request to void the judgment. Plaintiff timely appealed.[2]

## Discussion

Although not stated exactly as such, Plaintiff raises two issues on appeal: (1) whether Chancellor Heagerty erred by finding that Plaintiff waived its right to void the judgment dismissing its complaint and (2) whether Chancellor Heagerty erred by finding that dismissal of Plaintiff's complaint did not violate Plaintiff's due process rights.

---

[2] After oral argument, Plaintiff filed a motion to strike "any reference made by the defendant's counsel as to why a second motion to dismiss was filed" because counsel's statements were not supported by evidence in the record. We deny Plaintiff's motion as moot given that we, as always, consider only what is in the record before us.

- 6 -

We first note that the parties dispute whether Plaintiff's motion to alter or amend should be characterized as a motion to alter or amend the judgment pursuant to Tennessee Rule of Civil Procedure 59.04 or a motion for relief from a final judgment pursuant to Tennessee Rule of Civil Procedure 60.02. Defendant argues that we should review Plaintiff's motion to alter or amend as a motion pursuant to Rule 60.02, given that the rule explicitly provides for the specific relief requested by Plaintiff—voiding the judgment. *See* Tenn. R. Civ. P. 60.02 ("On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (3) the judgment is void[.]").

We conclude that Plaintiff properly filed its motion pursuant to Rule 59.04. Our Supreme Court has previously highlighted the different applications of Rule 59.04 and Rule 60.02, explaining:

> In the event that a party waits to seek relief for more than thirty days after entry of a final judgment, the trial court cannot grant relief under Rule 59. *See* Tenn. R. Civ. P. 59.02. After this time, relief must be sought pursuant to Tennessee Rule of Civil Procedure 60.02. *See, e.g., Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60.02] is to give relief from *final* judgments; Rule 59, providing for motion for new trial, is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet *become final*." (emphasis added)).

*Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012). "In Tennessee, it is generally considered that the judgment of a court of record is not final until the expiration of at least 30 days from its entry." *McBurney v. Aldrich*, 816 S.W.2d 30, 34 (Tenn. Ct. App. 1991). Rule 59.04 provides: "A motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment." In this case, Judge Ailor entered the order granting Defendant's motion to dismiss on September 13, 2021, and Plaintiff filed its motion to alter or amend the judgment less than thirty days later on October 6, 2021. We accordingly conclude that Plaintiff's motion should be considered as a motion under Rule 59.04.

Our Supreme Court has explained the standard of review applied to Rule 59.04 motions as follows:

> It is well-settled that a trial court's ruling on a motion to alter or amend may be reversed only for an abuse of discretion. *See, e.g., Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012) (citing *Stovall [v. Clarke]*, 113 S.W.3d [715] at 721 [(Tenn. 2003)]; *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008)). This Court has described the abuse of discretion standard in some detail:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted); *see also BIF, a Div. of Gen. Signals Controls, Inc. v. Serv. Const. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (citations omitted) ("The standard conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen.").

*Lee Medical* provided the framework for determining whether a trial court has properly exercised its discretion:

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's

> decision was within the range of acceptable alternative
> dispositions.

> *Lee Med.*, 312 S.W.3d at 524-25 (citing *Flautt & Mann v. Council of City
> of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF*,
> 1988 WL 72409, at *3)); *see also Vodafone Americas Holdings, Inc. &
> Subsidiaries v. Roberts*, 486 S.W.3d 496, 514 (Tenn. 2016).

*Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305-06 (Tenn. 2020).

Plaintiff argues that Judge Ailor was constitutionally incompetent to preside over the case because of the Tennessee Constitution's prohibition on judges presiding "on the trial of any cause . . . in which he may have been of counsel . . . except by consent of all the parties." Tenn. Const. art. VI, § 11. Tenn. Code Ann. § 17-2-101 likewise provides: "No judge or chancellor shall be competent, except by consent of all parties, to sit in the following cases: . . . (3) Where the judge or chancellor has been of counsel in the cause[.]" In addition, "Rule of Judicial Conduct 2.11(A) enumerates six specific circumstances in which recusal is required, even if a motion for recusal is not filed." *Cook v. State*, 606 S.W.3d 247, 254 (Tenn. 2020) (citing Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A)(1)-(6)). As the Tennessee Supreme Court noted in *Cook v. State*, "the six listed circumstances are illustrative not exclusive, and '[a] judge *shall* disqualify himself or herself in *any* proceeding in which the judge's impartiality might reasonably be questioned[.]'" *Id.* (quoting Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A)). One of these six circumstances includes when: "(6) The judge: (a) served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association[.]" Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A)(6). Given that Judge Ailor was purportedly a "lawyer in the matter in controversy" and constitutionally disqualified to preside over the case, Plaintiff contends that it should have been permitted to void the judgment granting Defendant's motion to dismiss. We disagree.

We, like Chancellor Heagerty, are unconvinced that the prior case between Plaintiff and the third party constitutes the same case as the one between Plaintiff and Defendant. By the time Plaintiff filed its action against Defendant, the case involving Judge Ailor's former client had concluded over ten years ago and the judgment against his former client had expired. The case before Judge Ailor was between Defendant and Plaintiff and was based on Defendant's alleged inaction after the prior case had concluded. The prior case was only tangentially related to the legal malpractice suit and was not the same case.

Plaintiff cites to Justice Birch's concurring and dissenting opinion in *Gibson v. Trant*, 58 S.W.3d 103 (Tenn. 2001) for the proposition that a legal malpractice case is a "trial within a trial", thereby rendering the underlying case with the third party the same case as the one between Plaintiff and Defendant. *Id.* at 118. Given that Plaintiff's complaint against Defendant was solely related to Defendant's post-judgment actions, having nothing to do with any of the substance of the underlying case, we find Plaintiff's reference to Justice Birch's language in *Gibson* inapplicable to the present set of facts. We fail to discern whatsoever any interest Judge Ailor would have in presiding over this case. The third party is merely tangential to the case, having been relieved of the expired judgment. There is no evidence in the record that would indicate that the third party or the facts of the underlying case would be relevant in any way to the legal malpractice case. The alleged actions committed by Defendant were post-judgment actions, none of which related to the substance of the case with the third party. We accordingly conclude that Judge Ailor was not "counsel in the cause" or a "lawyer in the matter in controversy" and, therefore, was not constitutionally disqualified from presiding over this case. It was a matter of Judge Ailor's discretion to recuse himself—not one of constitutional requirement. *See Corrado v. Hickman*, 113 S.W.3d 319, 325 (Tenn. Ct. App. 2003) ("Unless the grounds for recusal fall within those enumerated in Tenn. Const. art. 6, § 11 or Tenn. Code Ann. § 17-2-101(1994), these decisions are discretionary.") (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)).

We further conclude that no person of "ordinary prudence" "would find a reasonable basis for questioning" Judge Ailor's "impartiality." *See Cook*, 606 S.W.3d at 255 (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (in turn quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). The Tennessee Supreme Court has explained:

> Rule of Judicial Conduct 2.11 recognizes that "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." [*Davis v.*] *Liberty Mut. Ins. Co.*, 38 S.W.3d [560] at 565 [(Tenn. 2001)] (citing *Alley* [*v. State*], 882 S.W.2d [810] at 820 [(Tenn. Crim. App. 1994)]). As a result, Rule of Judicial Conduct 2.11 incorporates the objective standard Tennessee judges have long used to evaluate recusal motions. *In re Hooker*, 340 S.W.3d 389, 395 (Tenn. 2011) (citing *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008); *Liberty Mut. Ins. Co.*, 38 S.W.3d at 564-65). Under this objective test, recusal is required if " 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.' " *Liberty Mut. Ins. Co.*, 38 S.W.3d at 564-65 (quoting *Alley*, 882 S.W.2d at 820). Rule of Judicial Conduct 2.11 and the objective standard it embraces reflect that

our system of law has always endeavored to prevent even the probability of unfairness. . . . Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice."

*In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (quoting *Offutt* [*v. U.S.*], 348 U.S. [11] at 14, 75 S.Ct. 11 [(1954)]).

*Id.*

It was the Plaintiff's decision to file its complaint under a pseudonym, "John Doe Corporation," and to file redacted exhibits for the purpose of not alerting the third party that the judgment had expired. The purpose of filing suit in this manner was so that no one would be able to determine the identities of Plaintiff or the third party. Plaintiff was successful in keeping Judge Ailor in the dark. As Judge Ailor noted in his order of recusal, "there was nothing in the record to identify who the John Doe Corporation was or who the third-party debtor was that Defendant was collecting from and therefore the Court could not have had any knowledge of who these unidentified entities/individuals were when it ruled on the Defendant's Motion to Dismiss." Given that the standard is whether "a person of ordinary prudence in the judge's position, <u>knowing all of the facts known to the judge</u>, would find a reasonable basis for questioning the judge's impartiality", there was no reasonable basis for questioning Judge Ailor's impartiality, given that he knew of no facts that would alert him to any potential impropriety when he dismissed the case. *See Alley*, 882 S.W.2d at 820 (emphasis added).

Plaintiff further argues that Judge Ailor, not Chancellor Heagerty, should have been the judge to determine whether Plaintiff had waived its objection, and given that Judge Ailor did in fact recuse himself, he evidently did not find waiver. We, again, disagree. Judge Ailor recused himself from hearing Plaintiff's motion to alter or amend the judgment. Judge Ailor's later recusal does not render null and void his judgment of dismissal. That decision was for Chancellor Heagerty, who engaged in an analysis to determine whether Plaintiff had waived its objection to Judge Ailor. In presenting this argument, Plaintiff makes much of the case, *Reams v. Kearns*, 45 Tenn. 217 (1867), for the purported proposition that "a judgment rendered by a judge who is incompetent under article VI, section 11, of our 1834 constitution was void *ipso facto*." In *Reams*, the Tennessee Supreme Court held that the judgment, issued by a chancellor who "had been of counsel for the complainant and had prepared the bill and conducted the proceedings in Court", was a "mere nullity." *Id.* at 219, 221.

- 11 -

However, as acknowledged by Plaintiff, our Supreme Court later amended this principle in *Holmes v. Eason*, 76 Tenn. 754 (1882). In *Holmes*, the Supreme Court clarified that judgments are voidable only if an objection is made. *Id.* at 761 ("the judgment would be voidable not void in all cases in which the record failed to show the preliminary objection"). This principle is further elucidated in *Radford Tr. Co. v. E. Tenn. Lumber Co.*, 21 S.W. 329 (Tenn. 1893), in which our Supreme Court concluded: "The right to a trial by an impartial judge is a very high right, but these cases establish, not only that one may consent to a trial before a disqualified judge, but that if he fails to object he is conclusively presumed to consent." *Id.* at 331. Therefore, Chancellor Heagerty rightfully considered whether Plaintiff had waived any right to object to Judge Ailor's dismissal of the case based upon his purported disqualification, notwithstanding Judge Ailor's later discretionary decision to recuse himself.

The principles expressed in *Holmes* and *Radford* further lead us to conclude that Plaintiff did in fact waive its objection to Judge Ailor's presiding over the case. Rule 10B provides: "Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion <u>filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal</u>." Tenn. Sup. Ct. R. 10B, § 1.01 (emphasis added).

As evidenced by a pre-suit letter attached to the complaint, Plaintiff received its case file from the underlying suit by April 27, 2020, several months prior to filing its complaint. Moreover, Plaintiff should have been aware that Judge Ailor had been opposing counsel in the underlying case at the outset of the case, even without possessing and reviewing the underlying case file, given the fact that Plaintiff had previously been engaged in litigation against Judge Ailor's former client. Plaintiff has not alleged otherwise. Plaintiff asks that we conclude that Judge Ailor should have been able to somehow glean the identifies of Plaintiff and the third party from its complaint and redacted exhibits, yet fails to grapple with its own knowledge of Judge Ailor's prior involvement and its failure to bring this to Judge Ailor's attention while this case was pending for nearly a year. If Judge Ailor somehow should have known of the identifies of the parties despite Plaintiff's best efforts to keep them cloaked, then surely Plaintiff should have been aware of his prior representation of the third party at the outset of the case, or at the very least at some point long before dismissal. We further note that Plaintiff would have become aware that its case was assigned to Judge Ailor's division at the time the complaint was filed on October 28, 2020, or shortly thereafter. *See* Tenn. R. 6 Dist. Cir. Ct. Rule I ("The Clerk shall assign each new case to a particular Division of the Court under a procedure as approved by the Judges of the three Divisions of the Court."). Again, Plaintiff has not alleged otherwise. At the very latest, Plaintiff certainly would have become aware of the fact that Judge Ailor was assigned the case two months prior to the dismissal order, given that Judge Ailor signed the agreed order substituting Plaintiff's counsel in July 2021.

Despite filing its complaint in October 2020, Plaintiff did not alert Judge Ailor of his prior relationship to the unidentified third party until after Judge Ailor had entered a judgment on September 13, 2021—again, almost a year after the legal malpractice suit began. Moreover, Plaintiff did not file a motion for mandatory recusal until January 31, 2022, over four months after Judge Ailor had entered the judgment. Plaintiff, therefore, failed to promptly notify Judge Ailor of his potential disqualification and promptly seek recusal, thereby waiving any right to void the judgment granting Defendant's motion to dismiss. Plaintiff's counsel cites to his declaration, in which he states that he was in the process of drafting a recusal motion when he learned that Judge Ailor had dismissed the case, as evidence that Plaintiff was not trying to "game" the system by sitting on its knowledge of Judge Ailor's potential disqualification until after the case was dismissed. *See Crozier v. Goodwin*, 69 Tenn. 125, 128 (1878) ("It would be monstrous to allow a party to acquiesce in the action of such a court without objection, and then on appeal show the fact as ground for reversal.").

However, the fact that Plaintiff's counsel was in the process of drafting a recusal motion when its complaint was dismissed does not absolve Plaintiff of waiting nearly a year to bring the identity of the third party and Judge Ailor's prior representation of the third party to his attention. Although Mr. Duncan may have not become aware of Judge Ailor's prior representation of the third party until September 2021, Plaintiff "reasonably should have learned of the facts establishing the basis for recusal" shortly after filing its complaint. *See* Tenn. Sup. Ct. R. 10B, § 1.01. We accordingly affirm Chancellor Heagerty's finding of waiver, concluding that Plaintiff consented to Judge Ailor presiding over the matter, given its inaction until after the case had been dismissed.

Plaintiff also contests the manner in which Judge Ailor granted Defendant's motion to dismiss. Plaintiff argues that Judge Ailor dismissed its complaint without any notice or meaningful opportunity to be heard, thereby violating its right to due process, and that Judge Ailor's application of the 6th Judicial District's "Amended COVID-19 Comprehensive Plan of Action" was arbitrary and capricious. This argument is devoid of merit.

Our Supreme Court has explained the basic principles of due process as follows:

> The overarching principle of procedural due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Or, stated another way, procedural due process ensures that litigants are "given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner."

*In re Walwyn*, 531 S.W.3d 131, 138 (Tenn. 2017) (internal citations omitted).

- 13 -

Judge Ailor granted Defendant's motion to dismiss under the framework set forth in the 6ᵗʰ Judicial District's "Amended COVID-19 Comprehensive Plan of Action", which provided in pertinent part: "For any other motion filed after May 1, any party opposing the motion will have thirty days to file a written response and thereafter the Court may choose to rule without need for a hearing." Defendant filed its second motion to dismiss on July 13, 2021. Judge Ailor entered an order granting the motion to dismiss sixty-two days later on September 13, 2021. Plaintiff had notice of the pending motion to dismiss but chose not to file a response, despite having more than sixty days to do so.

Our Supreme Court has previously expressed:

> In 5 Wright & Miller, Federal Practice and Procedure, [§] 1190, in commenting upon Rule 7(b) Fed. R. Civ. P., (the 'motion rule'), the general rule is said to be:
>
> > Due process does not require that oral argument be permitted on a motion, and, except as otherwise provided by local rule, the court has discretion to determine whether it will decide the motion on the papers or hear argument by counsel.
>
> Oral argument is especially unnecessary when only questions of law are concerned. *Butterman v. Walston & Co.*, 50 F.R.D. 189 (E.D.Wis. 1970).

*Jerkins v. McKinney*, 533 S.W.2d 275, 279 (Tenn. 1976). *See Simpkins v. John Maher Builders, Inc.*, No. M2021-00487-COA-R3-CV, 2022 WL 1404357, at *24 (Tenn. Ct. App. May 4, 2022) ("Although the trial court eventually made a determination concerning Plaintiffs' motions based on the written submissions only, such action does not constitute a violation of due process.").

Plaintiff had notice that a motion to dismiss had been filed, and it had an opportunity—sixty-two days—to file a response and be heard through a written response. Judge Ailor did not violate Plaintiff's right to due process by acting in accordance with the 6ᵗʰ Judicial District's COVID-19 plan.[3] We further conclude that Judge Ailor did not apply the 6ᵗʰ Judicial District's COVID-19 plan arbitrarily or capriciously, again noting that he gave Plaintiff more than sixty days to respond. We affirm Chancellor Heagerty's order denying Plaintiff's motion to alter or amend the judgment.

---

[3] Judge Ailor's order granting Defendant's motion to dismiss states that the 6ᵗʰ Judicial District's "Covid Plan" was "approved by the Tennessee Supreme Court on May 5, 2020." Historically, this Court has had very little success in reversing any decision of the Tennessee Supreme Court.

## Conclusion

For the foregoing reasons, we affirm the denial of Plaintiff's motion to alter or amend the judgment.  This cause is remanded for collection of costs below.  The costs on appeal are assessed against the appellant, John Doe Corporation, and its surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE